## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE SEARS, ROEBUCK & CO. | ) | |
| TOOLS MARKETING AND SALES | ) | MDL-1703 |
| PRACTICES LITIGATION | ) | No. 05 C 4742 |
| | ) | |
| ------------------------------------ | | |
| | ) | |
| CHARLES CHATHAM et al., | ) | |
| individually and on behalf of all | ) | |
| others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 05 C 2623 |
| | ) | |
| SEARS, ROEBUCK & CO., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

Before the court is defendant's motion for partial dismissal of the amended consolidated class action complaint in Chatham v. Sears, Roebuck & Co., 05 C 2623.  For the reasons explained below, the motion is granted in part and denied in part.

### BACKGROUND

Nineteen plaintiffs[1] have brought the most recent complaint in

---

[1] Plaintiffs and their respective state citizenships are Charles Chatham (Alabama); William Hurst (Connecticut); David Hazard (Florida); William Beanblossom (Illinois); John S. Bertrand (Illinois); Janett Foster (Indiana); Jim Rooney (Maine); Neoma Manion (Missouri); Gary Larson (Montana); Carol Genzano (New Jersey); Charles Velez (New York); Larry Steven Anderson Jr. (North Carolina); Arlene Brown (Oklahoma); Susan Sybenga (Oklahoma); Michael Hollenbeck (Oregon); Heather Pistorius (Pennsylvania); Kathryn DeSautell (Texas); Bart Wright (Utah); and Tammy Cyr (Wisconsin).

this action, the "amended consolidated class action complaint," against defendant Sears, Roebuck & Company ("Sears"). Plaintiffs claim that Sears deceptively advertised its proprietary line of "Craftsman" tools as manufactured exclusively in the United States ("Made in USA") when, in fact, many of the tools are foreign-made or contain significant foreign parts.

The complaint alleges violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. ("CFDBPA") (Count I) and the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 et seq. ("DTPA") (Count II), and, in the alternative to Counts I and II, claims for damages and/or injunctive relief under the consumer fraud and deceptive trade practices acts of all fifty states and the District of Columbia (Count III). Plaintiffs also assert claims for unjust enrichment (Count IV), "equitable relief" (Count VI), and violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. ("Magnuson-Moss") (Count VII).[2]

We dismissed plaintiffs' previous "consolidated class action complaint" in this case, which was captioned <u>Anderson v. Sears, Roebuck & Co.</u> and alleged violations of the CFDBPA and DTPA as well as claims for unjust enrichment and equitable relief. Plaintiffs subsequently amended their complaint to add new plaintiffs and new claims. Sears now moves to dismiss all of the plaintiffs'

---

[2]/ The amended complaint does not contain a Count V.

Magnuson-Moss claims and eighteen of the nineteen plaintiffs' CFDBPA and DTPA claims.

**DISCUSSION**

**A.     CFDBPA (Count I)**

A plaintiff cannot recover under the CFDBPA unless the defendant's alleged deceptive conduct involves "trade or commerce." 815 ILCS 505/2. In <u>Avery v. State Farm Mutual Automobile Insurance Co.</u>, 835 N.E.2d 801 (Ill. 2005), the Illinois Supreme Court interpreted the CFDBPA's definition of "trade" and "commerce" and held that plaintiffs may bring a claim under the statute only if "the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." 835 N.E.2d at 854. <u>Avery</u> did not establish a bright-line test for determining when a transaction occurs "primarily and substantially" in Illinois, but the court pointed to the following factors to guide the analysis: (1) plaintiff's residence; (2) where the deception occurred, <u>i.e.</u>, where the actual misrepresentation was made; (3) where the damage to the plaintiff occurred; and (4) whether plaintiff communicated with defendant or its agents in Illinois. <u>Id.</u>

Pursuant to <u>Avery</u>, we dismissed plaintiffs' previous complaint because the only allegation in the complaint from which we could infer a nexus with Illinois was the location of Sears's principal place of business. The <u>Avery</u> court rejected the notion that an allegation that a defendant is headquartered in Illinois or that

its deceptive practices flowed from Illinois is sufficient to assert a claim:

> The appellate court's conclusion that a scheme to defraud was "disseminated" from State Farm's headquarters is insufficient. See, e.g., Rohlfing v. Manor Care, Inc., 172 F.R.D. 330, 340 & n.10 (N.D. Ill. 1997) (where the only connection with Illinois is the headquarters of the defendant or the fact that a scheme "emanated" from Illinois, the Consumer Fraud Act "does not apply to the claims of the non-Illinois plaintiffs . . . ").

Id. at 855. Here, not one plaintiff in the original "consolidated" complaint was an Illinois resident, and there were no allegations that any plaintiff read any misrepresentation in Illinois, purchased any tools in Illinois, or had any contact with a Sears agent in Illinois.

Sears contends that the CFDBPA claims asserted in the amended consolidated complaint by each of the plaintiffs except John S. Bertrand do not fare any better. Bertrand alleges that he is an Illinois citizen and that he has purchased various Craftsman tools from Sears's stores in Illinois in the three years prior to the commencement of this action. As for the remaining eighteen plaintiffs (the "Remaining Plaintiffs"), only one--William Beanblossom--is an Illinois citizen. No Remaining Plaintiff alleges that he or she bought tools from any of Sears's stores in Illinois. Nor does any plaintiff except Bertrand (and only impliedly, at that) allege that he or she saw, heard, or otherwise was exposed to any misrepresentation in Illinois. Furthermore, no plaintiff alleges any contact with a Sears agent in Illinois.

Plaintiffs argue that the following allegations about Sears establish that the "essence of the fraud occurred in Illinois":

- Its principal place of business is in Illinois.
- After the filing of a similar lawsuit alleging fraud, it issued a memorandum from Illinois headquarters directing sales managers to obliterate certain "Made in USA" claims on Craftsman tool labels.
- Its marketing campaign "was created and run from Illinois."
- Its catalogs have an Illinois return address, and Craftsman tools catalogs are distributed from Illinois.
- Its Web site was created in and is maintained from Illinois.
- Its Web site has an Illinois choice-of-law provision.
- Its "National Customer Relations" is located in Illinois.
- Its "Craftsman Club" membership and consumer inquiries are managed from phone banks in Illinois.

(Amended Consolidated Class Action Complaint, ¶¶ 24, 26, 31, 32, 43, 44, 70.) These allegations are merely permutations of the "emanating"-type allegations that were rejected in Avery. And given that none of the plaintiffs allege that they made any purchases of Craftsman tools from Sears' Web site or catalogs, the allegations regarding the Web site and catalogs are of little relevance to the issue of where the transactions "primarily and substantially" occurred.

There are no allegations in the amended complaint that any of the Remaining Plaintiffs who are not Illinois citizens read any misrepresentation in Illinois, purchased any tools in Illinois, or had any contact with a Sears agent in Illinois; therefore, they have failed to allege facts which, if true, would grant them

standing to pursue a claim under the CFDBPA, and Sears's motion will be granted as to those plaintiffs' claims.

As for plaintiff Beanblossom, he is an Illinois citizen, and we can reasonably infer from the allegations of the complaint that his damages were felt in Illinois and that some of his tool purchases were made in Illinois. Although we agree with Sears that our focus for purposes of Avery is primarily on the transactions and not on Beanblossom's citizenship, we are able to draw reasonable inferences about the transactions from the allegation of Illinois citizenship. Because we draw all reasonable inferences in the plaintiff's favor on a motion to dismiss, see Hentosh v. Herman M. Finch Univ. of Health Sciences, 167 F.3d 1170, 1173 (7th Cir. 1999), Sears's motion will be denied as to Beanblossom's CFDBPA claim.

**B.   DTPA (Count II)**

As stated in our previous opinion, our analysis of plaintiffs' CFDBPA claims is applicable to their DTPA claims. See In re Sears Roebuck & Co. Tools Mktg. and Sales Practices Litig., Nos. MDL-1703, 05 C 4742, 05 C 2623, 2005 WL 3077606, at *2 (N.D. Ill. Nov. 14, 2005) (citing Keller Med. Specialties Prods. v. Armstrong Med. Indus., Inc., 842 F. Supp. 1086, 1093 (N.D. Ill. 1994)). Accordingly, the DTPA claims of plaintiffs who are non-Illinois citizens will be dismissed, but plaintiff Beanblossom's claim (as well as that of plaintiff Bertrand) will not be dismissed.

**C.  Magnuson-Moss (Count VII)**

In Count VII, plaintiffs allege that Sears's representations that Craftsman tools were "Made in USA" violated the Magnuson-Moss Warranty Act, which provides that consumers who are "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief."  15 U.S.C. § 2310(d)(1).  In plaintiffs' view, Sears has "breached its express warranties to Plaintiffs . . . by selling its Craftsman tools as 'Made in USA'" when the tools or their substantial component parts actually were not.  (Amended Consolidated Class Action Complaint, ¶ 116.)

Sears asserts that plaintiffs fail to state a Magnuson-Moss claim because the phrase "Made in USA" does not meet the statute's definition of a "written warranty."  The term "written warranty" means

> (A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or
>
> (B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,

> which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6). Sears maintains that the phrase "Made in USA" does not constitute a "written warranty" because it does not affirm or promise that the material or workmanship is defect-free or will perform at a specified level over a specified time. We agree. The phrase is a product description that does not inform consumers that the tools are defect-free or make any representation about performance at a specified level over a specified time. We are unpersuaded by plaintiffs' curious (and unsupported) argument that "Made in USA" is a representation that the tool will have a "lifetime level of performance." (Plaintiffs' Response at 9.) Although the phrase does arguably relate to the "nature" of the material or workmanship, it fails to satisfy the defect-free/performance prong of § 2301(6)(A).

Plaintiffs make the strained argument that even if "Made in USA" does not constitute a written warranty under Magnuson-Moss, they nonetheless have stated a claim under the statute because the phrase constitutes an "implied warranty." In the amended complaint, however, plaintiffs allege that the phrase is an "express" warranty. (Amended Consolidated Class Action Complaint, ¶¶ 115-117.) We do not understand how the phrase could be both an express and an implied warranty, and indeed there is nothing "implied" by the phrase "Made in USA" (other than, of course, the

converse--that it is not made in another country). An implied warranty under Magnuson-Moss is "an implied warranty arising under State law . . . ." 15 U.S.C. § 2301(7). Plaintiffs contend that the phrase is an implied warranty "that the products will conform to their description," Plaintiffs' Response at 11, but fail to cite any Illinois law recognizing this type of implied warranty, and we have found none.

Because plaintiffs fail to allege a written (or implied) warranty that falls under the Magnuson-Moss Act, Count VII will be dismissed.

**CONCLUSION**

Defendant's motion for partial dismissal of the amended consolidated class action complaint is granted in part and denied in part. Counts I and II are dismissed with prejudice as to all plaintiffs except William Beanblossom and John S. Bertrand. Count VII is dismissed with prejudice as to all plaintiffs.

A status hearing is set for June 7, 2006, at 2:00 p.m. to discuss how next to proceed. By June 5, 2006, the parties should file cross-memoranda, limited to three pages, setting forth their respective views of the issues to be discussed at the status hearing.


DATE:      May 17, 2006

ENTER:     _____
           John F. Grady, United States District Judge