**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE SEARS, ROEBUCK & CO. | ) | |
| TOOLS MARKETING AND SALES | ) | MDL-1703 |
| PRACTICES LITIGATION | ) | No. 05 C 4742 |
| | ) | |
| ---------------------------------- | | |
| | ) | |
| CHARLES CHATHAM et al., | ) | |
| individually and on behalf of all | ) | |
| others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 05 C 2623 |
| | ) | |
| SEARS, ROEBUCK & CO., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Before the court is plaintiffs' motion for class certification. For the reasons explained below, the motion is denied.

**BACKGROUND**

In this putative class action, plaintiffs, who are citizens of several different states, claim that defendant Sears, Roebuck & Company ("Sears") deceptively advertised its proprietary line of "Craftsman" tools as manufactured in the United States when in fact many of the tools are foreign-made or contain significant foreign parts.

Plaintiffs' current complaint is titled "Third Amended

Consolidated Class Action Complaint" ("Third Amended Complaint").
After a series of motions to dismiss the instant complaint and
previous complaints or portions thereof, the remaining plaintiffs
are Charles Chatham, Gloria Layton, Heather Pistorius, Stephen
Jolley, Curtis Oates, William Hurst, Kathryn DeSautell, Nancy
Freid, and David Freid.[1] These plaintiffs' remaining claims are
for statutory consumer fraud (Count III), unjust enrichment (Count
IV), and "equitable relief" (Count VI).

In brief, plaintiffs' allegations are as follows. Defendant
Sears has sold a line of tools under its proprietary "Craftsman"
brand for over seventy years. Craftsman tools, which generate
approximately $4 billion in annual sales, are nationally marketed,
and Sears advertises and promotes the brand as being made in the
United States. Sears also advertises Craftsman tools as being of
higher quality because they are made in America by "American
workers." (Third Am. Compl. ¶ 2.)

Sears has made the representation that Craftsman tools are
made in the United States through various media: Sears's catalogs,
Sears's Web site, advertising in periodicals and newspapers, on
display racks and signs for the tools, and in television shows and

---

[1] On July 25, 2007, plaintiffs' counsel advised defendant's counsel that
the claims of plaintiff Larry Steven Anderson Jr., a citizen of North Carolina,
would be withdrawn. (Def.'s Corrected App. in Supp. of Opp'n Br., Ex. 15.) It
does not appear that Anderson's claims have yet been withdrawn, but we will
proceed as if Anderson has withdrawn his claims.
   Plaintiffs' home states are Alabama (Chatham); Ohio (Layton); Pennsylvania
(Pistorius and Jolley); Indiana (Oates); Connecticut (Hurst); Texas (DeSautell);
and Minnesota (the Freids).

commercials featuring actor John Ratzenberger, home improvement expert Bob Vila, and race car driver A.J. Foyt. Plaintiffs also allege on information and belief that Sears trains its employees to make verbal representations to customers that Craftsman tools are made in the United States.

Plaintiffs allege that Sears's "Made in USA" claim is deceptive because many, if not most, Craftsman tools are foreign-made or contain significant foreign components. The Third Amended Complaint cites several examples of tools, such as axes and hoes, that were marked "Made in USA" when in fact substantial parts of those tools were made abroad. Plaintiffs contend that Sears has violated Federal Trade Commission ("FTC") guidelines, which provide that "manufacturers and marketers should not indicate, either expressly or implicitly, that a whole product line is of U.S. origin when only some products in the product line are made in the U.S. according to the 'all or virtually all' standard." (Id. ¶ 94 (citing publication on FTC Web site).) In plaintiffs' view, Sears has exploited consumers' patriotism and desire to buy domestically-produced goods and to support American workers and the American economy. The "Made in USA" claim has enabled Sears to sell Craftsman tools at inflated prices.

At some point, Sears decided to manufacture more Craftsman products overseas in order to save money and increase profit margins. In the year 2000, approximately 20 percent of Craftsman

products were not made in the United States; by 2005, the number had increased to 70 percent.

During this time period, Sears's executives were aware that their customers believed that Craftsman products were made in the United States. Sears commissioned studies which found that consumers believed that "Made in the USA" was an attribute of Craftsman more so than any other brand of hand and power tools and from which Sears concluded that "Craftsman is well known to be a 'Made in USA' brand." (Id. ¶¶ 70-71.) Sears also commissioned studies on how the knowledge that Craftsman products were made overseas would affect customers. The findings were that 25 percent of Sears's customers would not buy the products at all "if it [became] known" that the products were made overseas; that an additional 49 percent of its customers "would pay between" 10 and 25 percent less "for products that they believed were not made in America"; and that 57 percent of its "do-it-yourself" customers and 72 percent of its "pro" customers would pay 20 to 50 percent more for a tool if it were made in the United States. At the same time, the Craftsman line of products had a profit margin of 31.3 percent. This margin was roughly twice that of other tool manufacturers whose products were not perceived by customers as being made in the United States.

Plaintiffs further allege: "Sears knew that if it became known that its Craftsman products were not made in the U.S.A. it would be

forced to reduce its prices and profit margins on Craftsman to be in line with other manufacturers. Sears decided not to correct the misconception its customers had about the origin of its Craftsman products because such a disclosure would cost it money." (Id. ¶¶ 74-75.)

After lawsuits similar to the instant suit were filed around the country, Sears "acknowledged the wrongfulness of its conduct" by instructing its employees to mark out or tape over "Made in USA" labels on certain Craftsman tools in Sears stores. (Id. ¶ 4.) According to plaintiffs, however, this cover-up did not completely eliminate the false representations, and "millions of consumers had been, and continue to be, misled by the improper claims of country of origin." (Id.)

The Third Amended Complaint includes a paragraph for each plaintiff (or plaintiff-couple, in the Freids' case) containing individualized allegations. For example, plaintiff Chatham's allegations are as follows:

> Plaintiff Charles Chatham is a citizen of the State of Alabama. Between 2003 and the present, at a Sears store in the Oxford Mall, in Oxford, Alabama, Plaintiff Chatham purchased a Craftsman edger, and Craftsman rakes, shovels, sledge hammers, and garden tools. Shortly before making his purchases, Plaintiff Chatham saw and relied on Sears advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, on Craftsman posters in the Sears store in Oxford Mall, on Bob Vila television commercials which he viewed from his home, and on the packaging of the tools he purchased. At the time of his purchases, and as a result of seeing these posters, television

commercials, and packaging, Plaintiff Chatham believed
that each Craftsman tool he purchased was made in the
United States, and that belief was the primary factor in
his decision to purchase Craftsman over any other brand.
As a result of Sears' concealment, as alleged below,
Plaintiff Chatham was unaware his Craftsman tools were
not made in the United States, until approximately the
time this lawsuit was filed. On post-purchase
inspection, he found an imprint on his Craftsman Edger,
which indicates it was made in Canada. On information
and belief, Plaintiff Chatham's above-referenced
Craftsman tools were not made in the United States.
Plaintiff Chatham further alleges that, but for Sears'
material misrepresentations alleged herein, he would not
have purchased Craftsman tools in the first instance,
and/or not at the inflated and premium prices he paid for
those tools.

(Id. ¶ 5.)

Plaintiffs now move for class certification.

## DISCUSSION

Federal Rule of Civil Procedure 23 allows a member of a class
to sue as a representative of the class only if (1) joinder of all
members is impractical because the class is so numerous, (2)
questions of law or fact are common to the class, (3) the
representative's claims are typical of those of the class, and (4)
the representative will fairly and adequately protect the interests
of the class. Fed. R. Civ. P. 23(a). "All of these elements are
prerequisites to certification; failure to meet any one of them
precludes certification as a class." Retired Chicago Police Ass'n
v. City of Chicago, 7 F.3d 584, 596 (7th Cir. 1993).

Plaintiffs must also show that the action is maintainable
under one of the three elements of Rule 23(b). Here, plaintiffs

seek class certification under Rule 23(b)(3), which requires that common questions of law or fact predominate over questions affecting only individual members and that the class action is the best method for fairly and efficiently adjudicating the controversy. The party seeking certification bears the burden of proving that all of Rule 23's requirements are satisfied. Trotter v. Klincar, 748 F.2d 1177, 1184 (7th Cir. 1984).

On a motion for class certification, we need not necessarily accept the plaintiffs' allegations as true. See Szabo v. Bridgeport Machs., Inc., 249 F.3d 672, 675-76 (7th Cir. 2001). "Before deciding whether to allow a case to proceed as a class action, . . . a judge should make whatever factual and legal inquiries are necessary under Rule 23," even if those considerations overlap with the merits of the case. See id. at 676. "[S]imilarity of claims and situations must be demonstrated rather than assumed." Id. at 677.

In addition to the express requirements of Rule 23, there is also an implied requirement: plaintiffs must show that the proposed class "is indeed identifiable as a class." Oshana v. Coca-Cola Co., 472 F.3d 506, 513 (7th Cir. 2006) (citing Simer v. Rios, 661 F.2d 655, 669 (7th Cir. 1981) ("It is axiomatic that for a class action to be certified a 'class' must exist.") and Alliance to End Repression v. Rochford, 565 F.2d 975, 977 (7th Cir. 1977) (stating that descriptions of a class must be definite enough that the class

can be ascertained)). "Proper identification of the proposed class serves two purposes. First, it alerts the court and parties to the potential burdens class certification may entail. In this way the court can decide whether the class device simply would be an inefficient way of trying the lawsuit for the parties as well as for its own congested docket. Second, proper class identification insures that those individuals actually harmed by defendant's wrongful conduct will be the recipients of the awarded relief." Oshana v. Coca-Cola Co., 225 F.R.D. 575, 580 (N.D. Ill. 2005) (citations and internal quotation marks omitted).

## A.    **Class Definition**

The plaintiffs seek certification of a class of "[a]ll persons and entities throughout the United States who purchased on[e] or more Craftsman tool[s] which were not all or virtually all 'Made in USA.'"[2]    (Mem. in Supp. of Mot. for Class Certification at 8.) More precisely, plaintiffs contend that a nationwide class should be certified for their unjust enrichment claims and that with respect to their statutory consumer fraud claims, some sort of undefined set of classes or subclasses "under" the laws of the plaintiffs' seven states should be certified.[3]

---

[2]    Excluded from the class are Sears, its subsidiaries, parents, divisions, or affiliates, and its officers and directors.

[3]    On November 9, 2007, plaintiffs filed a motion for leave to file supplemental authority in support of their motion for class certification. In that motion, plaintiffs cited a recent Northern District decision, Thorogood v. Sears, Roebuck & Co., No. 06 C 1999, 2007 WL 3232491 (N.D. Ill. Nov. 1, 2007), in which the court certified a class defined as "all persons residing in" 28

Sears maintains that plaintiffs' proposed class is impermissibly overbroad, unidentifiable, and unmanageable. We agree. One problem is that the definition contains no time limitation or indication of what the class period would be. As Sears points out, this was one of the problems with the proposed class definition in Clay v. American Tobacco Co., 188 F.R.D. 483, 490 (S.D. Ill. 1999) of "all persons in the United States who, as children, purchased and smoked cigarettes designed, manufactured, promoted or sold by the defendants." The Clay court observed that "a new set of plaintiffs would be added to the class each day"; here, we have a similar problem. Granted, the problem is not insurmountable; it would not be difficult for plaintiffs to add a time limitation to the class definition. In response to Sears's argument, plaintiffs contend vaguely that "the Court . . . could

---

specified states and the District of Columbia who had purchased certain models of Kenmore dryers in the last five years. Id. at *3. In their supplemental brief, plaintiffs attempt to refine their request for class certification on their consumer fraud claims, contending that "this Court may certify a consumer fraud class consisting of consumers from the 28 states [involved in Thorogood] and the District of Columbia" and that "the Court should also certify consumer fraud subclasses of consumers from Indiana and Alabama because this action focuses primarily on Defendant's conduct, and Indiana and Alabama have similar consumer fraud laws as compared to those consumer fraud laws of the 28 states that are based upon the Federal Trade Commission Act." (Mot. for Leave to File Supplemental Authority at 2-3.)

Plaintiffs' eleventh-hour effort to further define (and to expand beyond plaintiffs' seven home states) their consumer fraud subclasses is too little, too late. The supplemental brief adds virtually nothing to plaintiffs' inadequate analysis of the consumer fraud statutes that plaintiffs maintain are "virtually identical." (Id. at 2.) Contrary to plaintiffs' argument, Thorogood does not stand for the proposition that those statutes are virtually identical. In addition, Thorogood is distinguishable. The court in Thorogood relied heavily on the fact that the allegations involved a single product and a standard written misrepresentation, unlike the instant case. Moreover, Thorogood did not involve any problems with the class description or identifiability of the proposed class members. The Seventh Circuit's decision in Oshana, 472 F.3d 506, discussed infra, is the controlling law on that issue.

easily modify the class definition to include, for example, customers who purchased Craftsman tools within a certain time frame." (Reply at 8.) Plaintiffs, however, fail to suggest an appropriate class period and offer us no assistance whatsoever in deciding upon one.

The more serious problem with plaintiffs' class definition is its overbreadth. In a recent decision directly on point, the Seventh Circuit held that a proposed class was not sufficiently identifiable or definite. Oshana v. Coca-Cola Co., 472 F.3d 506, 514-15 (7th Cir. 2006). Plaintiff Oshana complained that the Coca-Cola Company ("Coke") deceived consumers of Diet Coke in Illinois by failing to disclose that fountain Diet Coke and bottled Diet Coke are not the same product (they do not contain the same sweeteners). Id. at 509. Like our plaintiffs, Oshana asserted claims for unjust enrichment and statutory consumer fraud. The Seventh Circuit observed that both of these claims required proof that the plaintiff was deceived in some manner. Id. at 513-15. The proposed class was defined as "[a]ll individuals who purchased for consumption and not resale fountain Diet Coke in Illinois from March 12, 1999 through the date of entry of an order certifying the class." Id. at 510. The district court determined, and the Seventh Circuit agreed, that the class definition was improper because membership in the proposed class required only the purchase of a fountain Diet Coke during a certain period of time, explaining

as follows:

> Such a class could include millions who were not deceived and thus have no grievance under the [Illinois Consumer Fraud and Deceptive Practices Act]. Some people may have bought fountain Diet Coke *because* it contained saccharin, and some people may have bought fountain Diet Coke *even though* it had saccharin. Countless members of Oshana's putative class could not show any damage, let alone damage proximately caused by Coke's alleged deception.

Id. at 514.

The instant putative class would include people who (1) bought Craftsman tools but never saw any Craftsman advertising; (2) bought Craftsman tools but never saw advertising representing that the tools were made in the United States; and (3) bought Craftsman tools with the knowledge that those tools were not made in the United States. None of those class members could prove deception.[4]

We reject plaintiffs' attempt to distinguish Oshana on the basis that Coke "*omitted* the fact that its fountain soda contained saccharin," while "Sears actively *misrepresented* the country-of-origin of its Craftsman tools in its marketing and advertising to consumers across the nation." (Reply at 6.) Plaintiffs fail to explain how this is a distinction that has any relevance to the breadth of their class definition. As in Oshana, the proposed class definition would include many class members who were not deceived and suffered no damage, even considering the allegation

---

[4] Plaintiffs will have to prove deception for both their consumer fraud and their unjust enrichment claims; see infra section C for a discussion of the elements of those claims.

that Sears's misconduct was "active." This deficiency dooms class certification.

Plaintiffs contend that even if their proposed class is overbroad, we should "modify the definition in order to bring said definition within the Court's interpretation of Rule 23, especially considering that doing so surely would not cause the Court any undue burden." (Reply at 7.) Plaintiffs are correct that it is within our power to *modify* proposed class definitions. See, e.g., In re Monumental Life Ins. Co., 365 F.3d 408, 414 (5th Cir. 2004). But it is not the court's role to fashion plaintiffs' class definitions for them where the original proposed class is so problematic. See Humphrey v. International Paper, No. 02 C 4147, 2003 WL 22111093, at *5 (N.D. Ill. Sept. 11, 2003) (denying class certification and remarking that, where proposed class definition was "seriously inadequate," court had "great reluctance to do major surgery on proposed class definitions that are so far from the mark as those offered by the plaintiffs"). Essentially, plaintiffs' counsel has attempted to shift the task of class definition to the court, especially in regard to the undefined classes or subclasses for the consumer fraud claims. We decline the undertaking. In any event, even if modified, the proposed classes likely would still fail to meet all of Rule 23's requirements, as discussed infra.

## B. **Rule 23(a) Requirements**

### 1. **Numerosity**

The proposed class must be so numerous that joinder of all members is impractical. Fed. R. Civ. P. 23(a)(1). Sears does not dispute plaintiffs' ability to establish the requisite numerosity, but does dispute that plaintiffs have satisfied their burden to do so. Plaintiffs assert that Sears sold Craftsman tools to "hundreds of thousands, if not millions, of individuals across the country during the relevant time period." (Mem. in Supp. of Mot. for Class Certification at 10.) Plaintiffs' argument is off the mark because it flows from the flawed class definition, so we agree with Sears that plaintiffs have not strictly satisfied their burden to establish numerosity. As a practical matter, though, considering plaintiffs' allegations and assuming a properly-drawn class definition, we doubt that numerosity would be a difficult hurdle for plaintiffs.[5]

## 2. __Commonality__

A named class representative may sue on behalf of a class only if there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). The more stringent Rule 23(b)(3) requirement that questions common to the class predominate over other questions subsumes the commonality requirement of Rule 23(a)(2). Georgine v. Amchem Prods., Inc., 83 F.3d 610, 627 (3d Cir. 1996); Guillory v. American Tobacco Co., No. 97 C 8641, 2001 WL 290603, at *3 (N.D.

---

[5]/    "Courts should make common sense assumptions when assessing numerosity." Oshana, 225 F.R.D. at 581.

Ill. Mar. 20, 2001). Because plaintiffs seek class certification pursuant to Rule 23(b)(3), we need not engage in a discussion of commonality separate from our discussion of predominance, _infra_.

### 3. **Typicality**

The proposed class representatives' claims must be typical of the putative class. Fed. R. Civ. P. 23(a)(3). A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory. _Oshana_, 472 F.3d at 514. "Even though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large." _Id._ (internal quotation marks omitted).

Plaintiffs assert that their claims are typical of those of the class because they are based on the same legal theories and because "Sears engaged in a uniform course of conduct with its marketing and advertising of the Craftsman line of tools through, _inter alia_, its prominent use of the 'Made in America' slogans." (Reply at 12.) In plaintiffs' view, Sears "uniformly misrepresented and/or omitted the material fact that many Craftsman products or integral components thereof are not made in America. Although there may have been many Craftsman advertisements over the years, the representation that the Craftsman line is American-made was a prominent and resonating theme and was advertised by Sears on

a national level throughout the relevant period." (Id. at 14.)

Sears argues that plaintiffs' claims are not typical of the putative class because Craftsman advertising was not uniform in its messages (it differed from one tool to another, from one marketplace to another, and from one year to the next), nor was it uniformly communicated to putative class members, nor did it uniformly affect putative class members. Sears also argues that typicality does not exist because plaintiffs' class definition includes many class members who could not demonstrate deception or resulting damages.

We agree with Sears that plaintiffs' claims are not sufficiently typical of the putative class to support class certification. Both of plaintiffs' legal theories--consumer fraud and unjust enrichment--will require plaintiffs to prove that Sears deceived them. Plaintiffs will first have to show that they saw or heard a particular misrepresentation or misrepresentations. Plaintiffs repeatedly focus on Sears's marketing and advertising "campaign" as a whole, but it is particular misrepresentations, not a "campaign," that serve as a basis for fraud. It is clear from the myriad advertisements and marketing materials that the parties have submitted in this case that there was and is a large amount of advertising for Craftsman tools that varies greatly. Plaintiffs themselves allege that they saw or heard Craftsman advertisements through a host of different media--newspapers, magazines,

television, Sears catalogs, Sears store signs, Sears's Web site, and oral representations by Sears employees. Only a portion of Craftsman advertising and marketing contained "Made in USA"-type representations. Courts in this Circuit have held that typicality does not exist where a putative class is exposed to a varied mix of representations communicated through different channels and absorbed in different ways and to different degrees. See Guillory, 2001 WL 290603, at *4-5; In re Sears Retiree Group Life Ins. Litig., 198 F.R.D. 487, 491 (N.D. Ill. 2000); Clay, 188 F.R.D. at 492.[6]

Furthermore, in addition to proving that they saw or heard a misrepresentation, plaintiffs will also have to prove causation-- for consumer fraud, that Sears's alleged misrepresentations proximately caused them injury, and for unjust enrichment, that the misrepresentations caused Sears to benefit to plaintiffs' detriment. Even putting to one side the problem that the proposed class includes people who were not injured, causation is another element that will be different for each plaintiff, and therefore the named plaintiffs' claims are not typical of those of the putative class.

Plaintiffs assert that typicality is not defeated because

---

[6] We reject plaintiffs' contention that the Rule 23 analyses in Guillory and Clay were "mere dicta" due to the courts' holdings that the proposed class definitions were indefinite. The Rule 23 analyses were additional grounds for denial of class certification, not "mere dicta." Nor do we find persuasive plaintiffs' attempts to otherwise distinguish those cases.

"when the 'total mix of statements' is reviewed . . . the overriding message is that Craftsman products are American-made." (Reply at 17.) This argument is conclusory and unpersuasive because plaintiffs have not shown that each of them viewed the "total mix" of Craftman advertising and marketing; indeed, they have shown the opposite--that they viewed only certain advertisements communicated in certain ways.

Plaintiffs also contend that the Seventh Circuit has found typicality to exist "despite some of the members of a class not having an injury," citing Rosario v. Livaditis, 963 F.2d 1013 (7th Cir. 1992). (Reply at 14.) The Rosario plaintiffs, former students at two beauty colleges, claimed that the colleges misrepresented their curricula and provided a "sham" cosmetology education. The defendants argued that typicality was defeated by the presence of two class members who testified that they were satisfied with their education. The Seventh Circuit rejected this argument, stating that those students' satisfaction did not necessarily lead to the conclusion that their claims were not typical of the class. Significantly, the Court reasoned that "[i]t is more likely that the 'satisfied' class members suffered less injury than other class members, not that they suffered no injury." 963 F.2d at 1018. Plaintiffs stretch Rosario too far. While typicality does not require all class members to suffer the same injury as the named representatives, implicit in the Court's above-

quoted statement is that typicality does require all class members to have suffered some injury.  See also Oshana, 472 F.3d at 514 (no typicality where proposed class included people who were not injured).

### 4.  Adequacy of Representation

The named plaintiffs must fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(4).  "[A]dequacy of representation is composed of two parts: the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members.  Therefore, a class is not fairly and adequately represented if class members have antagonistic or conflicting claims."  Retired Chicago Police Ass'n, 7 F.3d at 598 (internal quotation marks, brackets, and citation omitted).

Sears does not challenge the adequacy of plaintiffs' counsel, and we find no reason to do so.  Sears does assert that plaintiffs fail to establish the second prong of adequacy because plaintiffs' interests are not co-extensive with those of the putative class for two reasons: (1) plaintiffs' interests are different from those of commercial entities in the putative class that may not wish to disrupt their ongoing business relationships with Sears by suing it; and (2) there are unique defenses to each of the plaintiffs' claims.

As for the "entity" plaintiffs, the fact that some entities

may not wish to sue Sears does not mean that those plaintiffs' claims are "antagonistic or conflicting" with those of the named plaintiffs for Rule 23 purposes. Those plaintiffs could simply choose to opt out. The "unique defenses" also do not pose a problem with respect to adequacy of representation. Sears includes a list of all the defenses they assert to the claims of each of the named plaintiffs, but it appears that these defenses are largely the same for each plaintiff and that the same defenses would be raised against other class members. There may be great factual variance in contesting these defenses, and that variance relates to the lack of typicality and predominance, but it does not mean that plaintiffs' claims are "antagonistic or conflicting" with those of the putative class.

**C.  Rule 23(b) Requirements**

The proposed class is not sufficiently identifiable or definite, and plaintiffs have failed to meet all of the prerequisites of Rule 23(a). Moreover, plaintiffs have failed to establish that questions of law or fact common to class members predominate over questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy, as required by Rule 23(b)(3). When considering these factors, we examine the substantive elements of plaintiffs' claims, the proof necessary for those elements, and the manageability of trial on those issues.

See <u>Simer</u>, 661 F.2d at 672.

We will first discuss plaintiffs' unjust enrichment claims. Plaintiffs contend that the elements of unjust enrichment "focus entirely upon Defendant's uniform scheme of misleading conduct relating to the origin of its Craftsman products." (Reply at 21.) In plaintiffs' view, they must show merely that they conferred a benefit on Sears, Sears knew of the benefit, and Sears unjustly retained the benefit. (Mem. in Supp. of Mot. for Class Certification at 16.) Based on this analysis, plaintiffs argue that they will prove unjust enrichment with common evidence because they simply have to show Sears's knowledge and conduct, which is the same evidence for all class members, and that plaintiffs purchased Craftsman products that were not all or virtually all made in the United States, "which permitted Defendant to garner unjust profits." (<u>Id.</u> at 20.) Plaintiffs maintain that "Sears knew of the benefit conferred upon it by Plaintiffs and other consumers through, <u>inter alia</u>, the premium prices Plaintiffs and other consumers paid for Sears' Craftsman products due to Sears' marketing and advertising that all Craftsman products are made in the USA." (<u>Id.</u> at 21.)

In spite of the Seventh Circuit's statement in <u>Oshana</u> that deception must be proven where it is the basis for an unjust enrichment claim, see 472 F.3d at 515, and in spite of our previous ruling that at least under Illinois law their unjust enrichment

claims require proof of fraud, see <u>In re Sears, Roebuck & Co. Tools</u>
<u>Marketing & Sales Practices Litigation</u>, Nos. 05 C 4742, 05 C 2623,
2006 WL 3754823, at *4 (N.D. Ill. Dec. 18, 2006), plaintiffs
persist in arguing that their unjust enrichment claims do not
require proof of deception.  (Reply at 23.)  Plaintiffs cite no
case law in support of their position, and it is rejected.  It is
noteworthy that plaintiffs themselves describe their unjust
enrichment theory as follows: "Defendant received profits through
Plaintiffs and class members paying premium prices for goods that
they believed were American-made, but were not, and [] retaining
profits *through such deception* is unjust." (Reply at 22 (emphasis
added).)

Plaintiffs' unjust enrichment claim is based on wrongful
conduct--fraud.  Generally speaking, then, plaintiffs will have to
demonstrate that they were deceived by Sears's advertising and
marketing; that as a result, they conferred a benefit on Sears; and
that it would be unjust for Sears to retain that benefit.[7]

---

[7/]    These are the basic elements of unjust enrichment.  We will not
separately analyze the particular unjust enrichment law of each of plaintiffs'
several home states, especially considering that plaintiffs still have not
performed the rigorous analysis of this issue that is required to support their
conclusory argument that unjust enrichment law is "uniform throughout the
nation."  (Mem. in Supp. of Mot. for Class Certification at 15.)    Our
understanding is to the contrary.  Plaintiffs made the same conclusory argument
in their briefs in response to defendant's motion to dismiss.  In our ruling on
that motion, we stated:
> Plaintiffs attach an exhibit that purports to be a fifty-state
> survey of unjust enrichment.  However, it is merely a list of one-
> sentence statements of the elements of unjust enrichment drawn from
> a single case from each state.  Plaintiffs do not engage in any sort
> of analysis of the nuances of unjust enrichment law or what must
> actually be proved in each state.  It is clear just from our review

Accordingly, much more than just Sears's conduct is involved in proving unjust enrichment; the bulk of the proof will relate to individual factual issues. As we have discussed, each plaintiff will have been exposed to a different representation or mix of representations. Moreover, plaintiffs will have to demonstrate causation--a link between the alleged deception and the enrichment. Plaintiffs argue that they will rely on proof that class members paid a premium for Craftsman products as a result of the deception, evidently trying to avoid the complication that proving each class member's motivation for buying Craftsman products would be highly individualized. But regardless of what prices were paid, it will be necessary to show that each class member purchased the tool and paid the price as a result of defendant's deception. Moreover, it

---

of Illinois law that unjust enrichment is a tricky type of claim that can have varying interpretations even by courts within the same state, let alone amongst the fifty states. As discussed in <u>Clay v. American Tobacco Co.</u>, 188 F.R.D. 483, 501 (S.D. Ill. 1999) (citations omitted): "[V]ariances exist in state common laws of unjust enrichment. The actual definition of 'unjust enrichment' varies from state to state. Some states do not specify the misconduct necessary to proceed, while others require that the misconduct include dishonesty or fraud. Other states only allow a claim of unjust enrichment when no adequate legal remedy exists. Many states, but not all, permit an equitable defense of unclean hands. Those states that permit a defense of unclean hands vary significantly in the requirements necessary to establish the defense."

<u>In re Sears Litig.</u>, 2006 WL 3754823 at *1 n.3. Thus, plaintiffs were made aware that a detailed analysis of the various unjust enrichment laws is necessary to persuade us that these laws are "uniform." On the instant motion, plaintiffs' presentation has improved very little. Their "Nationwide Survey of Unjust Enrichment Laws" merely lists the elements of unjust enrichment as set forth in a single sentence from a single case from each jurisdiction and consists of no analysis whatsoever. (Mem. in Supp. of Mot. for Class Certification, Ex. 2.) Plaintiffs' "51 Jurisdiction Survey of Unjust Enrichment" (<u>Id.</u>, Ex. 3) attempts to show that disgorgement is a remedy for unjust enrichment in each state; this exhibit is not very helpful because it is not really in dispute that disgorgement is a remedy for unjust enrichment.

is not likely that the price would be common amongst class members,
because plaintiffs bought different tools from different locations
at different points in time, and they have not demonstrated that
Sears has a standard nationwide price formula for Craftsman tools.

Plaintiffs' consumer fraud claims also will involve highly
individualized factual determinations.[8]  There is no real dispute
that in general, for these claims, plaintiffs will have to
demonstrate at the least that Sears engaged in deceptive or
misleading conduct in the course of business and that plaintiffs
were thereby injured.  Like proof of unjust enrichment, proof of
consumer fraud will involve individualized issues of deception and
causation, and these issues would outweigh common issues.  See
Oshana, 225 F.R.D. at 586; Guillory, 2001 WL 290603, at *6, 8.

Manageability is also a significant problem here, and it is
clear that a class action is not the superior method for
adjudicating the case.  Beyond the problems with the overly broad
class definition, there are numerous highly individualized issues
involved in the claims and defenses.  In addition, plaintiffs
invoke the unjust enrichment laws of fifty-one jurisdictions and
the consumer fraud laws of seven states.  (And, as we have noted,
they attempt to shift to the court the task of defining appropriate

---

[8]  Plaintiffs' survey of the consumer fraud laws of plaintiffs' eight
(now seven) home states is not much better than their surveys of unjust
enrichment law.  The survey consists of extremely brief quotations from the
statutes, a statement of "yes" or "no" next to the words "scienter" and
"reliance," and for some states, one or two brief citations to case law for
varying propositions.

classes and subclasses.)   As set forth more fully <u>supra</u> notes 8 and 9, plaintiffs' essentially conclusory assertions that the unjust enrichment laws are uniform nationwide and that the consumer fraud laws are "very similar" are wholly unpersuasive.   The differences in the unjust enrichment and consumer fraud laws of the states are another factor that renders the proposed class action unmanageable.

<u>**CONCLUSION**</u>

Because plaintiffs have failed to establish that the prerequisites of Rule 23 are satisfied, plaintiffs' motion for class certification is denied.

A status hearing is set for December 19, 2007, at 11:00 a.m. to discuss the next steps in this litigation.

DATE:      December 4, 2007

ENTER:   _____
         John F. Grady, United States District Judge