## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

```
IN RE SEARS, ROEBUCK & CO.        )
TOOLS MARKETING AND SALES         )     MDL-1703
PRACTICES LITIGATION              )     No. 05 C 4742
                                  )
----------------------------------
                                  )
CHARLES CHATHAM et al.,           )
individually and on behalf of all )
others similarly situated,        )
                                  )
              Plaintiffs,         )
                                  )
              v.                  )     No. 05 C 2623
                                  )
SEARS, ROEBUCK & CO.,             )
                                  )
              Defendant.          )
```

### MEMORANDUM OPINION

Before the court is defendant's motion to dismiss nine plaintiffs' claims in the third amended complaint, which are the only remaining claims in this action. For the reasons stated below, the motion is granted in part and denied in part.

### BACKGROUND

Plaintiffs, who are citizens of several different states, claim that defendant Sears, Roebuck & Company ("Sears") deceptively advertised its proprietary line of "Craftsman" tools as manufactured in the United States when in fact many of the tools are foreign-made or contain significant foreign parts. The current complaint is titled "Third Amended Consolidated Class Action

Complaint" ("Third Amended Complaint"). After a series of rulings on motions to dismiss the instant complaint and previous complaints or portions thereof, the remaining plaintiffs are Charles Chatham, Gloria Layton, Heather Pistorius, Stephen Jolley, Curtis Oates, Kathryn DeSautell, Nancy and David Freid, and William Hurst.[1] These plaintiffs' remaining claims are for statutory consumer fraud (Count III), unjust enrichment (Count IV), and "equitable relief" (Count VI).

This case was filed as a putative class action. In December 2007, we denied plaintiffs' motion for class certification, holding that the proposed class was overbroad and insufficiently identifiable and that plaintiffs had failed to satisfy the typicality and predominance requirements of Federal Rule of Civil Procedure 23. Thereafter, Sears moved to dismiss the remaining plaintiffs' claims, but we suspended briefing on that motion and requested briefs addressing the propriety of our continued exercise of jurisdiction pursuant to the Class Action Fairness Act in light of our denial of plaintiff's motion for class certification. In an order of November 6, 2008, we concluded that we continue to have jurisdiction over this matter and directed briefing to proceed on

---

[1] On July 25, 2007, plaintiffs' counsel advised defendant's counsel that the claims of plaintiff Larry Steven Anderson Jr., a citizen of North Carolina, would be withdrawn. (Def.'s Corrected App. in Supp. of Opp'n Br., Ex. 15.) It does not appear that Anderson's claims have yet been withdrawn, but we will proceed as if Anderson has withdrawn his claims.

Plaintiffs' home states are Alabama (Chatham); Ohio (Layton); Pennsylvania (Pistorius and Jolley); Indiana (Oates); Texas (DeSautell); Minnesota (the Freids); and Connecticut (Hurst).

defendant's motion to dismiss.  The motion is now fully briefed.

**DISCUSSION**

**A.   Standard of Review**

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits.  5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004).  When evaluating such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  Hentosh v. Herman M. Finch Univ. of Health Sciences, 167 F.3d 1170, 1173 (7th Cir. 1999); Jang v. A.M. Miller & Assocs., 122 F.3d 480, 483 (7th Cir. 1997).  However, the "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" EEOC v. Concentra Health Servs., Inc., 496 F.3d 773, 776 (7th Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)).  The complaint must "contain enough facts to state a claim to relief that is plausible on its face." Killingsworth v. HSBC Bank Nevada, 507 F.3d 614, 618 (7th Cir. 2007).

Plaintiffs' remaining claims are for statutory consumer fraud (Count III), unjust enrichment (Count IV), and "equitable relief"

(Count VI).[2] Because these claims are based on fraud, specifically the allegation that Sears has intentionally misled consumers about the country of origin of Craftsman tools, the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply here. Rule 9(b) requires plaintiffs to plead with particularity the factual bases for averments of fraud, including "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." <u>Hefferman v. Bass</u>, 467 F.3d 596, 601 (7th Cir. 2006); <u>see also</u> <u>DiLeo v. Ernst & Young</u>, 901 F.2d 624, 627 (7th Cir. 1990) (stating that the plaintiff must plead the who, what, when, where, and how of the alleged fraud).

## B.   **Plaintiffs' Allegations**

In our opinion denying plaintiffs' class certification motion, we set forth the background facts as alleged by plaintiffs:

---

[2]   In Count VI, plaintiffs seek "equitable relief," specifically "[t]hat a judicial determination and declaration be made of the rights of Plaintiffs . . . and the corresponding responsibilities of Defendant;" "[t]hat Defendant be declared financially responsible for the costs and expenses of providing restitution and refunds to Plaintiffs . . . ; "[t]hat Defendant be ordered to give adequate descriptions of the country of origin of Craftsman tools, and that it be stopped and enjoined from making blanket claims that Craftsman tools are "Made in USA"; and "[t]hat Sears be ordered to disgorge . . . its ill-gotten profits and to make full restitution to Plaintiffs . . . ." (Third Am. Compl. ¶ 144.)   This general claim for equitable relief merely contains remedies that plaintiffs seek in conjunction with the substantive counts of the complaint. Because it is not a stand-alone claim, it will be dismissed. (If it were not being dismissed on this ground, we would discuss it in conjunction with the other two counts of the complaint at issue because, like those counts, it is grounded in fraud.)
Plaintiff Charles Chatham is not alleging a claim for equitable relief. (Pls.' Mem. in Opp'n at 4 n.1.)

Defendant Sears has sold a line of tools under its proprietary "Craftsman" brand for over seventy years. Craftsman tools, which generate approximately $4 billion in annual sales, are nationally marketed, and Sears advertises and promotes the brand as being made in the United States. Sears also advertises Craftsman tools as being of higher quality because they are made in America by "American workers." (Third Am. Compl. ¶ 2.)

Sears has made the representation that Craftsman tools are made in the United States through various media: Sears's catalogs, Sears's Web site, advertising in periodicals and newspapers, on display racks and signs for the tools, and in television shows and commercials featuring actor John Ratzenberger, home improvement expert Bob Vila, and race car driver A.J. Foyt. Plaintiffs also allege on information and belief that Sears trains its employees to make verbal representations to customers that Craftsman tools are made in the United States.

Plaintiffs allege that Sears's "Made in USA" claim is deceptive because many, if not most, Craftsman tools are foreign-made or contain significant foreign components. The Third Amended Complaint cites several examples of tools, such as axes and hoes, that were marked "Made in USA" when in fact substantial parts of those tools were made abroad. Plaintiffs contend that Sears has violated Federal Trade Commission ("FTC") guidelines, which provide that "manufacturers and marketers should not indicate, either expressly or implicitly, that a whole product line is of U.S. origin when only some products in the product line are made in the U.S. according to the 'all or virtually all' standard." (Id. ¶ 94 (citing publication on FTC Web site).) In plaintiffs' view, Sears has exploited consumers' patriotism and desire to buy domestically-produced goods and to support American workers and the American economy. The "Made in USA" claim has enabled Sears to sell Craftsman tools at inflated prices.

At some point, Sears decided to manufacture more Craftsman products overseas in order to save money and increase profit margins. In the year 2000, approximately 20 percent of Craftsman products were not made in the United States; by 2005, the number had increased to 70 percent.

During this time period, Sears's executives were aware that their customers believed that Craftsman products were made in the United States. Sears commissioned

studies which found that consumers believed that "Made in the USA" was an attribute of Craftsman more so than any other brand of hand and power tools and from which Sears concluded that "Craftsman is well known to be a 'Made in USA' brand." (Id. ¶¶ 70-71.) Sears also commissioned studies on how the knowledge that Craftsman products were made overseas would affect customers. The findings were that 25 percent of Sears's customers would not buy the products at all "if it [became] known" that the products were made overseas; that an additional 49 percent of its customers "would pay between" 10 and 25 percent less "for products that they believed were not made in America"; and that 57 percent of its "do-it-yourself" customers and 72 percent of its "pro" customers would pay 20 to 50 percent more for a tool if it were made in the United States. At the same time, the Craftsman line of products had a profit margin of 31.3 percent. This margin was roughly twice that of other tool manufacturers whose products were not perceived by customers as being made in the United States.

Plaintiffs further allege: "Sears knew that if it became known that its Craftsman products were not made in the U.S.A. it would be forced to reduce its prices and profit margins on Craftsman to be in line with other manufacturers. Sears decided not to correct the misconception its customers had about the origin of its Craftsman products because such a disclosure would cost it money." (Id. ¶¶ 74-75.)

After lawsuits similar to the instant suit were filed around the country, Sears "acknowledged the wrongfulness of its conduct" by instructing its employees to mark out or tape over "Made in USA" labels on certain Craftsman tools in Sears stores. (Id. ¶ 4.) According to plaintiffs, however, this cover-up did not completely eliminate the false representations, and "millions of consumers had been, and continue to be, misled by the improper claims of country of origin." (Id.)

In re Sears, Roebuck & Co. Tools Mktg. and Sales Practices Litig., Nos. 05 C 4742 & 05 C 2623, 2007 WL 4287511, at *1-2 (N.D. Ill. Dec. 4, 2007). The Third Amended Complaint includes a paragraph for each plaintiff (or plaintiff-couple, in the Freids' case) containing individualized allegations. For example, plaintiff

Chatham's allegations are as follows:

> Plaintiff Charles Chatham is a citizen of the State of Alabama. Between 2003 and the present, at a Sears store in the Oxford Mall, in Oxford, Alabama, Plaintiff Chatham purchased a Craftsman edger, and Craftsman rakes, shovels, sledge hammers, and garden tools. Shortly before making his purchases, Plaintiff Chatham saw and relied on Sears advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, on Craftsman posters in the Sears store in Oxford Mall, on Bob Vila television commercials which he viewed from his home, and on the packaging of the tools he purchased. At the time of his purchases, and as a result of seeing these posters, television commercials, and packaging, Plaintiff Chatham believed that each Craftsman tool he purchased was made in the United States, and that belief was the primary factor in his decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as alleged below, Plaintiff Chatham was unaware his Craftsman tools were not made in the United States, until approximately the time this lawsuit was filed. On post-purchase inspection, he found an imprint on his Craftsman Edger, which indicates it was made in Canada. On information and belief, Plaintiff Chatham's above-referenced Craftsman tools were not made in the United States. Plaintiff Chatham further alleges that, but for Sears' material misrepresentations alleged herein, he would not have purchased Craftsman tools in the first instance, and/or not at the inflated and premium prices he paid for those tools.

(Id. ¶ 5.) Layton, Pistorius, Jolley, Oates, DeSautell, Hurst, and the Freids make similar allegations, the particulars of which are discussed infra.

**C.**   **Plaintiffs' Compliance with Rule 9(b)**

The principal argument raised by Sears is that plaintiffs'

claims are not pled with the requisite particularity.[3]  Plaintiffs allege that they saw and relied on Sears's "advertising for the Craftsman line, which stated 'Made in USA,' and/or included depictions of the United States flag." (Third Am. Compl. ¶¶ 5, 6, 19, 20, 24, 25, 29, 34.)  In most of the paragraphs setting forth plaintiffs' individualized fact allegations, plaintiffs then state the general types of advertisements they saw but do not specify any particular advertisements.  Sears contends that plaintiffs have insufficiently specified the "what" and "when" aspects of these advertisements.  According to Sears, the FTC, whose standards are invoked by plaintiffs themselves, has stated in a publication for businesses that it evaluates implied "Made in USA" claims (such as the display of a United States flag) by "focus[ing] on the overall impression of the advertising, label, or promotional material" and examining the context.  (Def.'s Mem. in Supp. of Mot. to Dismiss at 7 (citing Federal Trade Commission, Facts for Business: Complying with the Made in the USA Standard, <u>available at</u> http://www.ftc.gov/bcp/edu/pubs/business/adv/bus03.shtm  (last modified Oct. 28, 2008)).  Sears submits that federal courts also examine the context in which claims of geographic origin appear, citing, <u>inter alia</u>, <u>Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc.</u>, 26 F. Supp. 2d 834 (E.D. Va. 1998).

---

[3]  In its initial brief, Sears also contested the exercise of federal jurisdiction over Chatham's and Layton's claims, but acknowledges in its reply brief that our November 6, 2008 ruling moots these challenges.

Plaintiffs do not allege that Sears's advertisements uniformly represented that the <u>entire</u> Craftsman line of products was made in the United States. Rather, even the advertisements cited in the Third Amended Complaint show that Sears sometimes qualified its claim. Sears argues that "the critical importance of the factual context [plaintiffs] fail[] to allege is persuasively demonstrated by" Exhibit A-2 to the Third Amended Complaint, a Sears advertisement that states "1,800 CRAFTSMAN HAND TOOLS. MADE IN AMERICA. GUARANTEED FOREVER!" (Def.'s Mem. in Supp. of Mot. at 8.) (Paragraph 52 of the Third Amended Complaint refers to a statement on Sears's Craftsman web site that cited a total of "over 5,100 Craftsman tools.") Sears further argues that this advertisement does not state or imply that non-hand-tool Craftsman products or the entire Craftsman line is "Made in USA," so it is important that plaintiffs specify which advertisement or advertisements they allegedly viewed and relied upon.

As to seven of the nine remaining plaintiffs, we agree with Sears that the allegations concerning the alleged misrepresentations are insufficient to plead the "what" and "when" aspects of fraud as required by Rule 9(b). Those seven plaintiffs' allegations, in pertinent part, are as follows:

> Charles Chatham: <u>Between 2003 and the present</u>[4], at a Sears store in the Oxford Mall, in Oxford, Alabama, Plaintiff Chatham purchased a Craftsman edger, and

_____

[4]/ The Third Amended Complaint was filed on February 15, 2007.

Craftsman rakes, shovels, sledge hammers, and garden tools. <u>Shortly before making his purchases</u>, Plaintiff Chatham saw and relied on Sears advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, <u>on Craftsman posters in the Sears store in the Oxford Mall, on Bob Vila television commercials which he viewed from his home, and on the packaging of the tools he purchased.</u>

.  .  .

Gloria Layton: <u>Between December 2002 and May 2006</u>, Plaintiff Layton purchased a Craftsman tool set, socket set, drill, and drill bits, from the Sears store in the Ohio Valley Mall in St. Clairsville, Ohio. <u>Shortly before making her purchases</u>, Plaintiff Layton saw and relied on the advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, <u>on Sears sale advertisements, and in television, magazines, and on a banner in the Sears store.</u>

.  .  .

Heather Pistorius: <u>Between December 2002 and the present</u>, Plaintiff Pistorius purchased from Sears stores in Pennsylvania, Craftsman hammers, wrenches, a lawnmower, a utility light, a weedwacker, and screwdrivers.  In making her purchases, Plaintiff Pistorius relied on the advertising for the Craftsman line, which stated "Made in USA," and/or included depictions or the United States flag, <u>including Craftsman "Made in USA" images on the Sears, Craftsman and NASCAR websites; Sears flyers; and on the labels or stamps on her Craftsman tools.</u>

.  .  .

Kathryn DeSautell: <u>Between December 2002 and the present</u>, Plaintiff DeSautell purchased a Craftsman bench grinder, table saw, vise grips, corded drill, shovel, and hand tools, from the Sears store in Plano, Texas. <u>Shortly before making her purchases</u>, Plaintiff DeSautell saw and relied on the advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, <u>on the in-store Sears banners, magazine ads, and on a home-improvement show on television.</u>

.  .  .

Nancy and David Freid: <u>Between 2002 and 2006</u>, Plaintiffs Freid purchased Craftsman wrenches, screwdrivers, sockets, power tools, and saws, from the Sears store in Mankato, Minnesota. <u>Shortly before making these</u>

<u>purchases</u>, Plaintiffs Freid saw and relied on the advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, <u>in Sears magazine advertisements, in-store advertisements, and on the packaging for the tools themselves.</u>
. . .
William Hurst: <u>Between December 2002 and the present</u>, Plaintiff Hurst purchased Craftsman wrenches, compressors, a sand blaster, a shop wet/dry vacuum cleaner, a belt sander, screwdrivers, tool boxes, and a table saw, from Sears stores in Meriden, Connecticut; Torrington, Connecticut; Winsted, Connecticut, Farmington, Connecticut; and online. <u>Shortly before making his purchases</u>, Plaintiff Hurst saw and relied on Sears' advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, <u>in magazine advertisements, on posters in the Sears stores in Connecticut, on the Sears Craftsman website, in Sears catalogs, and on television advertisements viewed from his home in Connecticut.</u>

(Third Am. Compl. ¶¶ 5, 29, 19, 20, 34, 6 (emphasis added).)

These plaintiffs fail to allege that they saw any particular misrepresentation or the specific content of the misrepresentation. Although specific advertisements are mentioned in the section of the complaint titled "Substantive Allegations," these plaintiffs do not allege that they saw any of these specific advertisements. Their failure to identify the misrepresentation they saw and relied upon is fatal to their claim. <u>See, e.g.</u>, <u>Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chicago</u>, 927 F.2d 988, 992-93 (7th Cir. 1991) (pleadings must state the specific content of the false representations); <u>Heller Bros. Bedding, Inc. v. Leggett & Platt, Inc.</u>, No. 01 C 3409, 2001 WL 740514, at *3 (N.D. Ill. June 28, 2001) (dismissing fraud claim for failure to allege location and

content of alleged misrepresentations and stating that "[t]o respond properly to a charge of fraud, defendants need to be appraised of the specific comments that are claimed to constitute falsehoods."). Plaintiffs are not even specific about whether they viewed advertising that made the express "Made in USA" claim or merely contained an implied claim that included a depiction of the United States flag. Sears is correct that in the case of implied claims, the context of the representation is very important; although the Black & Decker case was in a summary judgment posture, it is illustrative of the importance of context in evaluating implied claims of origin.[5] Plaintiffs fail to supply that context.

These plaintiffs also fail to adequately allege when they saw any misrepresentation; a statement that a plaintiff purchased a Craftsman product over a span of several years and that he or she saw unspecified advertising "shortly before" the purchases is not a particularized allegation of time. See, e.g., In re McDonald's French Fries Litig., 503 F. Supp. 2d 953, 956 (N.D. Ill. 2007) (holding that plaintiffs failed to plead fraud with particularity where they alleged that McDonald's, on its web site, had misrepresented its potato products as being gluten-free, but failed to allege the time frame more specifically than "before February

---

[5]/ Among other things, the court found that a "Made in USA" logo in a catalog and on a promotional flyer suggested that most, but not all, of counter-defendant's products were made in the United States. Black & Decker, 26 F. Supp. 2d at 864-65.

13, 2006"); <u>Cook v. Exelon Corp.</u>, No. 01 C 7406, 2002 WL 31133274, at *5 (N.D. Ill. Sept. 26, 2002) ("Providing broad time ranges when misrepresentations were made is not sufficient to satisfy Rule 9(b).").

Plaintiffs contend that the "dates and times of the Vila commercials should be readily ascertainable from Defendant's own records regarding the purchasing of advertising time." (Pls.' Mem. in Opp'n at 7 n.3.) This argument is misplaced because plaintiffs have the burden of alleging specifically <u>which</u> commercials they saw and the content of those commercials. The fact that a certain commercial aired does not mean that plaintiffs viewed the commercial. Moreover, "a plaintiff claiming fraud . . . must do more pre-complaint investigation to assure that the claim is responsible and supported . . . ." <u>Borsellino v. Goldman Sachs Group, Inc.</u>, 477 F.3d 502, 507 (7th Cir. 2007). Plaintiffs also contend that their allegations are sufficiently specific, "[g]iven the lengthy and perverse nature of Sears' false and deceptive practices at issue." (Pls.' Mem. in Opp'n at 7.) But they cite no authority for the proposition that the requirements of Rule 9(b) are relaxed when the alleged misrepresentations are made over time, and there is authority rejecting that proposition. <u>See MapQuest, Inc. v. Civix-DDI, LLC</u>, No. 08 C 1732, 2009 WL 383476, at *4 (N.D. Ill. Feb. 11, 2009).

Two of the nine remaining plaintiffs, Stephen Jolley and

Curtis Oates, do allege fraud with the requisite specificity. Jolley alleges that in the summer of 2003, he bought Craftsman products from the Sears store in Langhorne, Pennsylvania, including a hand ax. He alleges that in making the purchases, he relied on the "Made in USA" or United States flag advertising on the label of the hand ax. (Third Am. Compl. ¶ 24.) Oates alleges that in 2003, he bought several Craftsman products, including an air ratchet, an air compressor, and several hand tools, from Sears stores in Valparaiso, Indiana and Portage, Indiana. He alleges that in making the purchases, he relied on the salesperson, who told him that all Craftsman products are made in the United States, as well as the advertising on the label of his tools. (Third Am. Compl. ¶ 25.) In our view, these allegations are sufficient to comply with Rule 9(b).

We are unpersuaded by Sears's assertion that plaintiffs have failed to plead the requisite causation or damages. The plaintiffs allege that as a result of the advertisements they saw, they believed that their Craftsman tools were made in the United States and that this belief was the primary factor in their decisions to purchase Craftsman tools instead of other brands. They allege that "but for Sears's material misrepresentations alleged herein," they would not have purchased the Craftsman tools at all, or would not have purchased them at the "inflated and premium" prices they paid for those tools. (Third Am. Compl. ¶¶

5, 29, 19, 24, 25, 20, 34, 6.)  As for their consumer fraud claims, plaintiffs allege in Count III that Sears's deceptive acts have "directly, foreseeably and proximately caused damages" to plaintiffs and that the "Made in USA" claim created an impression regarding Craftsman tools and enabled Sears to sell Craftsman products at a price higher than it would otherwise have been able to charge.  (Id. ¶ 135.)  Furthermore, plaintiffs allege that they have been injured and that their "injury consists of paying higher prices for Craftsman tools than they otherwise would have paid in the absence of these violations."  (Id. ¶ 137.)  In Count IV, plaintiffs' unjust enrichment claim, plaintiffs allege that Sears has "inequitably and knowingly received and retained a monetary benefit from selling tools" to plaintiffs, to their detriment. (Id. ¶ 140.)  In our view, plaintiffs therefore have adequately alleged causation and damages.

Sears maintains that plaintiffs' allegations that Sears's deceptive advertisements caused them to buy or pay an inflated price for the products are "defeated" by their allegations that on post-purchase inspection, they found that certain of their Craftsman tools bear imprints indicating that they were made in foreign countries.  According to Sears, courts analyze all of the information that was available to a consumer, and these imprints constituted "full disclosure."  We reject this argument for two reasons.  First, plaintiffs do not allege, and we cannot infer

from their allegations, that the imprint was visible and thus "available" to them when they purchased their tools. The argument is therefore inappropriate on a motion to dismiss. Second, Sears fails to explain as a practical matter how a foreign imprint that contradicted a prior or simultaneous claim that a tool was made in the United States could constitute "full disclosure" without some sort of express disclaimer informing consumers about which statement was true. We also reject Sears's argument that plaintiffs do not allege that they got anything less than what they paid for and therefore fail to allege any damages. Plaintiffs adequately allege damages by stating that Sears's misrepresentations caused them to pay higher prices for their tools than they otherwise would have paid.

In summary, the allegations of plaintiffs Charles Chatham, Gloria Layton, Heather Pistorius, Kathryn DeSautell, Nancy Freid, David Freid, and William Hurst do not meet the specificity requirements of Rule 9(b). The allegations of plaintiffs Stephen Jolley and Curtis Oates do comply with Rule 9(b).

## D.  **Standing**

Sears contends that plaintiffs Charles Chatham, Heather Pistorius, Stephen Jolley, and Curtis Oates fail to allege standing to assert their statutory consumer fraud claims because they do not allege that their purchases of Craftsman products were for personal, family, or household use as required by the laws of

their home states.

Chatham brings a claim for violation of the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1 et seq. (the "Alabama Act"). The Alabama Act provides a private right of action for deceptive practices to a "consumer," Ala. Code § 8-19-10(a), which is defined as "[a]ny natural person who buys goods or services for personal, family or household use," Ala. Code § 8-19-3(2).

Pistorius and Jolley bring claims for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. § 201-1 et seq. (the "Pennsylvania Law"). The Pennsylvania Law provides a private right of action for deceptive practices to "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes . . . ." 73 Pa. Cons. Stat. Ann. § 201-9.2.

Oates brings a claim for violation of the Indiana Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1 et seq. (the "Indiana Act"). The Indiana Act provides a private right of action for deceptive practices that relate to a "consumer transaction." Ind. Code Ann. § 24-5-0.5-3, -4. A "consumer transaction" is defined as a "sale . . . or other disposition of an item of personal property . . . to a person for purposes that are primarily personal, familial, charitable, agricultural, or household . . . ." Ind. Code Ann. § 24-5-0.5-2(a)(1).

Sears argues that because Chatham, Pistorius, Jolley, and

Oates have failed to allege that their purchases of Craftsman products were for purposes of personal, family, or household use (or, as to Oates, for the additional purposes identified in the Indiana Act), they therefore fail to allege standing. Chatham responds that he purchased Craftsman tools for personal use. (Pls.' Mem. in Opp'n at 5.) Pistorius and Jolley respond that all of the tools that they allege they purchased "are household tools primarily used for the maintence and repair of one's home." (<u>Id.</u> at 15-16.) Oates responds simply that his purchases were "consumer transactions." (<u>Id.</u> at 19.) All of the plaintiffs argue that "nothing in the complaint" contradicts these "facts." (<u>Id.</u> at 5, 15-16, 19.)

We conclude that Chatham, Pistorius, Jolley, and Oates have failed to allege that their purchases were for the requisite purposes to constitute consumer transactions under the laws of their home states and have thus failed to allege standing. It is true that nothing in the complaint indicates that these plaintiffs did <u>not</u> purchase their products for these purposes, but nothing in the complaint indicates that they <u>did</u>, and it would not be reasonable for us to so infer because it is equally possible that any of these tools were purchased for business purposes. As Sears points out, pursuant to the terms of the relevant statutes, the controlling factor is not the type of product purchased, but the purpose for which the product was purchased.

**E.  Scienter and Reliance**

According to Sears, plaintiffs Pistorius and Jolley must allege scienter and reliance pursuant to the Pennsylvania Law, and they have failed to do so.  Plaintiffs do not dispute that they must allege these elements, but contend that they are properly pled.  Sears's scienter--that Sears knew or reasonably should have known that its "Made in USA" claims were false--is adequately alleged in paragraphs 67-76 of the complaint.  Even under Rule 9(b), state of mind may be averred generally.  Hefferman, 467 F.3d at 601.  As for justifiable reliance, Sears contends that Pistorius and Jolley do not sufficiently allege it because they allege that the foreign marks on their tools disclose their foreign origins.  For the same reasons we rejected this argument in relation to causation, see supra section C, we reject it with regard to justifiable reliance.

Sears also contends that plaintiff Oates has failed to allege scienter as required by the Indiana Act because he does not allege that either Sears or the salesperson who told him that all Craftsman products are made in the United States knew or reasonably should have known that their representations were false.  As noted supra, plaintiffs adequately allege Sears's scienter in paragraphs 67-76 of the complaint.  Moreover, plaintiffs allege that Sears trained its salespeople to promote Craftsman tools as made in the United States and that the verbal

representations of Sears's salespeople that Craftsman tools are made in the United States were made pursuant to Sears marketing or training programs. (Third Am. Compl. ¶¶ 64-65.)

## F. __The Economic Loss Doctrine__

Sears contends that the statutory fraud claims of Pistorius and Jolley are barred by the economic loss doctrine, citing <u>Werwinski v. Ford Motor Co.</u>, 286 F.3d 661 (3d Cir. 2002). The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." <u>Id.</u> at 671. In <u>Werwinski</u>, the Third Circuit Court of Appeals affirmed the district court's holding that the economic loss doctrine barred claims under the Pennsylvania Law. The Third Circuit found that Pennsylvania law on the application of the doctrine to intentional fraud claims was unsettled and that federal and state decisions interpreting Pennsylvania law shed "little light" on the question. <u>Id.</u> at 675. It "explor[ed] persuasive authority from other jurisdictions" in reaching its conclusion that the Supreme Court of Pennsylvania would apply the doctrine to common-law fraud claims because plaintiffs have only a limited interest in such a tort remedy when contract remedies are available. <u>Id.</u> at 679-80. The Court reasoned that statutory fraud claims should be treated the same way because exempting statutory fraud claims from the doctrine would "virtually nullify"

the economic loss doctrine.  Id. at 681.

By contrast, Pennsylvania state courts have expressly rejected Werwinski's holding and refused to apply the economic loss doctrine to claims under the Pennsylvania Law.  See Smith v. Reinhart Ford, 68 Pa. D. & C. 4th 432, 437-38 (Pa. Com. Pl. 2004); Oppenheimer v. York Int'l, No. 4348 MARCHTERM 2002, 2002 WL 31409949, at *6 (Pa. Com. Pl. Oct. 25, 2002); Zwiercan v. General Motors Corp., No. 3235 JUNETERM 1999, 2002 WL 31053838, at *6-7 (Pa. Com. Pl. Sept. 11, 2002).  The state courts explained that applying the economic loss doctrine to claims under the Pennsylvania Law would eviscerate the purpose of the statute and that the Pennsylvania legislature was fully aware of the doctrine when it enacted the Pennsylvania Law and thus did not intend for the doctrine to bar claims brought pursuant to the Law.  We agree with these courts that it would defeat the purpose of the Pennsylvania Law to hold that the doctrine applies to claims brought pursuant to the Law.  Moreover, "state courts are the ultimate expositors of state law . . . ." Mullaney v. Wilbur, 421 U.S. 684, 691 (1975).  Therefore, we hold that Pistorius and Jolley's claims are not barred by the economic loss doctrine.

## G.  **Pre-Filing Notice**

Sears argues that the statutory fraud claims of Chatham and DeSautell fail because those plaintiffs do not allege that they complied with the pre-filing notice requirements of the relevant

statutes.

The Alabama Act, pursuant to which Chatham's claim is brought, requires that "[a]t least 15 days prior to the filing of any action under this section, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be communicated to any prospective respondent by placing in the United States mail or otherwise."  Ala. Code § 8-19-10(e).

Chatham contends that Sears was put on actual notice of "all Plaintiffs' claims" on December 2, 2004, when a plaintiff filed the first lawsuit alleging that Sears had engaged in false and deceptive practices."  (Pls.' Mem. in Opp'n at 5.)  He cites Alabama case law stating that the purposes of the notice provision are to provide a seller with an opportunity to prepare a defense or notify his supplier and to enable the seller to cure the practice in order to minimize buyers' losses and reduce his own liability.  (Id.)  Chatham argues that Sears suffers no prejudice from the lack of written notice because it made efforts to cure its misrepresentations and that to dismiss his claim "on a purported technical deficiency" would "contradict[] the substance of the Alabama Act's notice provisions."  (Id. at 6.)[6]

Courts in Alabama have held that the failure to allege

---

[6] Chatham does not contend that he could amend the complaint to allege that he did send Sears the required pre-filing notice, nor does DeSautell.

compliance with the Alabama Act's pre-filing written notice requirement is fatal to claims under the Act. <u>See</u> <u>Deerman v. Federal Home Loan Mortgage Corp.</u>, 955 F. Supp. 1393, 1399-1400 (N.D. Ala. 1997); <u>Givens v. Rent-A-Center, Inc.</u>, 720 F. Supp. 160, 162 (S.D. Ala. 1988). Chatham cites no authority for the proposition that we can ignore the statute's explicit requirement. Sears was not put on notice of his individual claim through the filing of another consumer's claim. Therefore, in addition to the failure to comply with Rule 9(b), the failure to allege the requisite pre-filing notice is another basis for dismissing Chatham's statutory fraud claim.

DeSautell brings a claim under the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41 <u>et seq.</u> (the "Texas Act"). Under the Texas Act, "[a]s a prerequisite to filing a suit" under the Act, "a consumer shall give written notice . . . at least 60 days before filing the suit advising . . . in reasonable detail of the consumer's specific complaint" and the amount of damages. Tex. Bus. & Com. Code Ann. § 17.505(a). In the event that a plaintiff does not provide the required notice, the statute calls for a sixty-day "abatement" (a stay) of the action rather than a dismissal. <u>Id.</u> § 17.505(d). In that connection, Sears has a separate motion for abatement of DeSautell's action.

DeSautell contends that Sears had notice of her claim when

the first consumer lawsuit alleging "Made in USA" misrepresentations was filed and that Texas courts have excused formal notice under less compelling circumstances and when the purposes of the Texas Act (which are similar to those of the Alabama Act) are served. As with Chatham, we reject the argument that another consumer's suit somehow put Sears on notice of the instant claim. The Texas cases cited by DeSautell are inapposite because in one of them,[7] notice had been sent and received, and in the other,[8] one of the exceptions to the notice requirement, the impending expiration of the statute of limitations, applied. Because DeSautell did not plead that she gave Sears written notice, the proper course of action under the Texas Act would be to abate the action. However, we have already determined that DeSautell's pleadings did not meet the specificity requirements of Rule 9(b). Her claim will therefore be dismissed, not abated, and Sears's pending motion to abate her action will be denied as moot.

## H. **Injunctive Relief**

Nancy and David Freid bring claims for violation of both the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. Ann. § 325F.69 et seq., and the Minnesota Deceptive Trade Practices Act, Minn. Stat. Ann. § 325D.44 et seq. (the "MDTPA"). We have already

---

[7] Vista Chevrolet, Inc. v. Lewis, 704 S.W.2d 363, 370 (Tex. Ct. App. 1985).

[8] Star Houston, Inc. v. Kundak, 843 S.W.2d 294, 296 (Tex. Ct. App. 1992).

held that the Freids fail to allege these claims with the specificity required by Rule 9(b). Sears maintains that there is another basis for dismissing the MDTPA claim: remedies available for an MDTPA violation are limited to injunctive relief, not the money damages sought by the Freids. In Sears's view, the Freids have failed to allege a claim for injunctive relief because "whatever harm the Freids may have suffered from Sears' alleged conduct already occurred; aware of that alleged deception, and therefore armed with knowledge, the Freids can avoid it and are not 'likely' to be damaged in the future." (Def.'s Mem. in Supp. of Mot. at 26.)

The Freids do not dispute that injunctive relief is the only remedy available under the MDTPA, see PCS Professional Claim Service, LLC v. Brambilla's Inc., Civil No. 06-4540(DWF/AJB), 2007 WL 3313661, at *8 (D. Minn. Nov. 6, 2007), but contend that they are entitled to ask the court for an injunction to prevent Sears from misrepresenting the manufacturing origin of Craftsman tools going forward.

The complaint seeks injunctive relief and alleges that Sears "deceived and continues to deceive Plaintiffs and other members of the Class." (Third Am. Compl. ¶ 133.) We have denied class certification, so the remaining relevant allegation is that Sears "continues to deceive Plaintiffs." But this allegation contradicts plaintiffs' allegations that they have discovered

Sears's fraud. Because the complaint does not allege a risk of future harm to the Freids, their MDTPA claim will be dismissed.

## I. **Unjust Enrichment**

We have already determined that seven of the nine remaining plaintiffs fail to meet Rule 9(b)'s pleading requirements for fraud-based claims, and because these plaintiffs' unjust enrichment claims are based on fraud, they will be dismissed. Sears maintains that plaintiffs fail to state unjust enrichment claims for additional reasons. We decline to address these arguments as to the seven plaintiffs who have failed to plead in conformity with Rule 9(b), but we will analyze the unjust enrichment claims of plaintiffs Jolley and Oates because they have adequately pleaded fraud.

Pennsylvania law applies to Jolley. Sears first contends that Pennsylvania law does not recognize an unjust enrichment claim grounded in tort, citing Romy v. Burke, No. 1236 MAY.TERM 2002, 2003 WL 21205975, at *5 (Pa. Com. Pl. May 2, 2003.) Romy does not stand for this broad proposition; the court stated that the plaintiffs in that case had not alleged a claim of unjust enrichment separate from their claim for a constructive trust and in an aside remarked that such claim did not "make sense" in that situation, where plaintiffs were claiming tort damages. From this statement alone, we cannot conclude that Pennsylvania does not recognize unjust enrichment claims based in tort. Sears also

contends that Jolley's claim fails because he alleges that he has adequate remedies at law. The cases cited by Sears do not support this argument either; they stand for the proposition that Jolley could not <u>recover</u> under both a legal theory and the equitable (in Pennsylvania) theory of unjust enrichment, but not that he cannot plead both theories. Sears's third argument is that Jolley's unjust enrichment claim is unavailable because an express contract governed his purchases of Craftsman products. The case that Sears relies on, however, is based on the law of New Jersey, not Pennsylvania.

Indiana law applies to Oates. Sears argues that Oates's unjust enrichment claim fails for two of the same reasons it cited regarding Jolley's claim: unjust enrichment is an equitable remedy and Oates has an adequate remedy at law, and express contracts govern his Craftsman purchases. As to the first proposition, Sears cites an Indiana appellate court opinion to the effect that unjust enrichment is an equitable claim. <u>See</u> <u>King v. Terry</u>, 805 N.E.2d 397, 400 (Ind. Ct. App. 2004). However, we have also found case law from appellate courts in Indiana that states that unjust enrichment is a claim for legal relief. <u>See, e.g.</u>, <u>Murray v. City of Lawrenceburg</u>, No. 15A04-0803-CV-122, 2009 WL 736071, at *12 (Ind. Ct. App. Mar. 19, 2009); <u>Nehi Beverage Co. of Indianapolis v. Petri</u>, 537 N.E.2d 78, 85 (Ind. Ct. App. 1989). Given this mixed bag, we will not dismiss Oates's unjust enrichment claim on

this ground.

As for the contract argument, the cases cited by Sears do stand for the proposition that under Indiana law, when there is a governing contract, no claim for unjust enrichment can be asserted. <u>See</u> <u>Ormond v. Anthem, Inc.</u>, No. 05-CV-1908-DFH-TAB, 2008 WL 906157, at *24 (S.D. Ind. Mar. 31, 2008); <u>Schafer v. Jeld Wen Doors/IWP Custom Door Div.</u>, No. 2:07-CV-163-TLS, 2007 WL 3407659, at *6 (N.D. Ind. Nov. 9, 2007). We cannot find any Indiana case law recognizing an unjust enrichment claim based on fraud, and Oates cites none. Accordingly, his claim for unjust enrichment will be dismissed.

**J.  <u>Dismissals</u>**

Count VI, a claim for "equitable relief," will be dismissed with prejudice as to all plaintiffs because it is not a stand-alone claim, see <u>supra</u> n.1.

In addition, the following claims of the remaining plaintiffs will be dismissed for the following reasons:

> Charles Chatham: failure to comply with Rule 9(b) (all counts), failure to allege standing (Count III), failure to allege compliance with pre-filing notice requirement (Count III)

> Gloria Layton: failure to comply with Rule 9(b) (all counts)

> Heather Pistorius: failure to comply with Rule 9(b) (all counts); failure to allege standing (Count III)

> Stephen Jolley: failure to allege standing (Count III)

Curtis Oates: failure to allege standing (Count III); failure to allege unjust enrichment (Count IV)

Kathryn DeSautell: failure to comply with Rule 9(b) (all counts)

Nancy and David Freid: failure to comply with Rule 9(b) (all counts); failure to allege risk of future harm (MDTPA claim)

William Hurst: failure to comply with Rule 9(b) (all counts)

The only claim left standing is the unjust enrichment claim of Stephen Jolley.  Furthermore, the only basis for dismissing his statutory fraud claim as well as that of Curtis Oates is the failure to allege standing.  It would be simple for Jolley and Oates to amend their statutory fraud claims to allege whether their purchases were for consumer use, and it is far from clear that an amendment to cure this problem would be futile.  Therefore, their statutory fraud claims will be dismissed without prejudice.

The final issue is whether the remainder of the dismissals should be with or without prejudice.  Sears argues that after more than three years and four complaints, plaintiffs are still unable to sufficiently allege any claims.  Sears also argues that any further amendment would be futile because plaintiffs' counsel admitted that the allegations in this complaint are the best that plaintiffs can muster.  Plaintiffs fail to respond to these arguments.

The repeated failure to cure deficiencies by amendments

previously allowed is a ground for denying leave to amend. Airborne Beepers & Video, Inc. v. AT & T Mobility LLC, 499 F.3d 663, 666 (7th Cir. 2007). Plaintiffs' counsel has represented to the court that plaintiffs' allegations are as clear as they can be, and plaintiffs have been given numerous opportunities to replead their fraud-based claims as well as explicit instructions for sufficiently repleading their claims. Moreover, plaintiffs do not request leave to amend the complaint yet again. Therefore, the claims of Chatham, Layton, Pistorius, DeSautell, the Freids, and Hurst, and the unjust enrichment claim of Oates, will be dismissed with prejudice.

In addition, see supra n.1, the claims of Larry Steven Anderson Jr. are considered to be voluntarily dismissed.

## CONCLUSION

The motion of defendant Sears, Roebuck & Company to dismiss nine plaintiffs' claims in the third amended complaint is granted in large part and denied only as to the unjust enrichment claim of Stephen Jolley. The statutory fraud claims of Jolley and Oates are dismissed without prejudice, with leave to amend by April 21, 2009. The remaining claims of plaintiffs Chatham, Layton, Pistorius, DeSautell, Oates, Hurst, and the Freids are dismissed with prejudice.

A status hearing is set for April 22, 2009, at 11:00 a.m. to discuss further proceedings in this litigation.

DATE:       April 6, 2009


ENTER:      _____

John F. Grady, United States District Judge