**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE SEARS, ROEBUCK & CO. )<br>TOOLS MARKETING AND SALES )<br>PRACTICES LITIGATION )<br>) | MDL-1703<br>No. 05 C 4742 |
| ------------------------------------ | |
| )<br>CHARLES CHATHAM et al., )<br>individually and on behalf of all )<br>others similarly situated, )<br>)<br>        Plaintiffs, )<br>)<br>        v. )<br>)<br>SEARS, ROEBUCK & CO., )<br>)<br>        Defendant. ) | <br><br><br><br><br><br><br><br>No. 05 C 2623 |

**MEMORANDUM OPINION**

Before the court are three motions: (1) plaintiff Stephen Jolley's motion for certification of a Pennsylvania class; (2) plaintiff Curtis Oates's motion for certification of an Indiana class; and (3) defendant's motion to limit Jolley's recovery on his unjust enrichment claim. For the reasons stated below, plaintiffs' motions are denied, and defendant's motion is granted.

**BACKGROUND**

Plaintiffs claim that defendant Sears, Roebuck & Company ("Sears") deceptively advertised its line of "Craftsman" tools as manufactured in the United States when in fact many of the tools are foreign-made or contain significant foreign parts. In a

previous opinion, we set forth the background facts as alleged by plaintiffs[1] as follows:

> Defendant Sears has sold a line of tools under its proprietary "Craftsman" brand for over seventy years. Craftsman tools, which generate approximately $4 billion in annual sales, are nationally marketed, and Sears advertises and promotes the brand as being made in the United States. Sears also advertises Craftsman tools as being of higher quality because they are made in America by "American workers."
> 
> Sears has made the representation that Craftsman tools are made in the United States through various media: Sears's catalogs, Sears's Web site, advertising in periodicals and newspapers, on display racks and signs for the tools, and in television shows and commercials featuring actor John Ratzenberger, home improvement expert Bob Vila, and race car driver A.J. Foyt. Plaintiffs also allege on information and belief that Sears trains its employees to make verbal representations to customers that Craftsman tools are made in the United States.
> 
> Plaintiffs allege that Sears's "Made in USA" claim is deceptive because many, if not most, Craftsman tools are foreign-made or contain significant foreign components. The Third Amended Complaint cites several examples of tools, such as axes and hoes, that were marked "Made in USA" when in fact substantial parts of those tools were made abroad. Plaintiffs contend that Sears has violated Federal Trade Commission ("FTC") guidelines, which provide that "manufacturers and marketers should not indicate, either expressly or implicitly, that a whole product line is of U.S. origin when only some products in the product line are made in the U.S. according to the 'all or virtually all' standard." In plaintiffs' view, Sears has exploited consumers' patriotism and desire to buy domestically-produced goods and to support American workers and the American economy. The "Made in USA" claim has enabled Sears to sell Craftsman tools at inflated prices.
> 
> At some point, Sears decided to manufacture more Craftsman products overseas in order to save money and increase profit margins. In the year 2000, approximately

---

[1] We summarized the allegations of the Third Amended Complaint; those of the current complaint are very similar.

    20 percent of Craftsman products were not made in the United States; by 2005, the number had increased to 70 percent.

    During this time period, Sears's executives were aware that their customers believed that Craftsman products were made in the United States.  Sears commissioned studies which found that consumers believed that "Made in the USA" was an attribute of Craftsman more so than any other brand of hand and power tools and from which Sears concluded that "Craftsman is well known to be a 'Made in USA' brand."  Sears also commissioned studies on how the knowledge that Craftsman products were made overseas would affect customers.  The findings were that 25 percent of Sears's customers would not buy the products at all "if it [became] known" that the products were made overseas; that an additional 49 percent of its customers "would pay between" 10 and 25 percent less "for products that they believed were not made in America"; and that 57 percent of its "do-it-yourself" customers and 72 percent of its "pro" customers would pay 20 to 50 percent more for a tool if it were made in the United States.  At the same time, the Craftsman line of products had a profit margin of 31.3 percent.  This margin was roughly twice that of other tool manufacturers whose products were not perceived by customers as being made in the United States.

    Plaintiffs further allege: "Sears knew that if it became known that its Craftsman products were not made in the U.S.A. it would be forced to reduce its prices and profit margins on Craftsman to be in line with other manufacturers.  Sears decided not to correct the misconception its customers had about the origin of its Craftsman products because such a disclosure would cost it money."

    After lawsuits similar to the instant suit were filed around the country, Sears "acknowledged the wrongfulness of its conduct" by instructing its employees to mark out or tape over "Made in USA" labels on certain Craftsman tools in Sears stores.

In re Sears, Roebuck & Co. Tools Mktg. and Sales Practices Litig., Nos. 05 C 4742 & 05 C 2623, 2007 WL 4287511, at *1-2 (N.D. Ill. Dec. 4, 2007) (citations omitted).

    The current complaint is titled "Fourth Amended Consolidated

Class Action Complaint." After a series of rulings on motions to dismiss previous complaints or portions thereof, the remaining plaintiffs are Stephen Jolley, who is a citizen of Pennsylvania, and Curtis Oates, who is a citizen of Indiana. Jolley alleges that in the summer of 2003, he bought Craftsman products from the Sears store in Langhorne, Pennsylvania, including a hand ax, for personal use. He alleges that in making the purchases, he relied on the "Made in USA" representation on the label of the hand ax. (Fourth Am. Compl. ¶ 5.) Oates alleges that in 2003, he bought several Craftsman products from Sears stores in Valparaiso, Indiana and Portage, Indiana, including an air ratchet, an air compressor, and several hand tools, for personal use. He alleges that in making the purchases, he relied on the salesperson, who told him that all Craftsman products are made in the United States, as well as the advertising on the labels of his tools. (<u>Id.</u> ¶ 6.) The remaining claims are both plaintiffs' claims for statutory consumer fraud (Count III) and Jolley's claim for unjust enrichment (Count IV).

This case was filed as a putative class action. In December 2007, we denied plaintiffs' motion for class certification. Now, Jolley seeks certification of a class of Pennsylvania plaintiffs, and Oates seeks certification of a class of Indiana plaintiffs. Sears has filed a motion to limit Jolley's recovery on his unjust enrichment claim.

**DISCUSSION**

**A. Plaintiffs' Motions for Class Certification**

Federal Rule of Civil Procedure 23 allows a member of a class to sue as a representative of the class only if (1) joinder of all members is impractical because the class is so numerous, (2) questions of law or fact are common to the class, (3) the representative's claims are typical of those of the class, and (4) the representative will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). "All of these elements are prerequisites to certification; failure to meet any one of them precludes certification as a class." Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 596 (7th Cir. 1993).[2]

Plaintiffs also must show that the action is maintainable under one of the three categories of Rule 23(b). Here, class certification is sought under Rule 23(b)(3), which requires that common questions of law or fact predominate over questions affecting only individual members and that a class action is the best method for fairly and efficiently adjudicating the controversy. The party seeking certification bears the burden of proving that all of Rule 23's requirements are satisfied. Trotter

---

[2] In addition to the four express requirements of Rule 23(a), there are two implied requirements: first, the class must be sufficiently defined so that it is identifiable; and second, the named representatives must fall within the putative class. Fournigault v. Independence One Mortgage Corp., 234 F.R.D. 641, 644 (N.D. Ill. 2006). It appears to us that plaintiffs have satisfied these implied requirements, and defendants do not argue otherwise.

v. Klincar, 748 F.2d 1177, 1184 (7th Cir. 1984). "Class certification requires a rigorous investigation into the propriety of proceeding as a class . . . ." Livingston v. Associates Fin., Inc., 339 F.3d 553, 558 (7th Cir. 2003).

"[A] court may not refuse to certify a class on the ground that it thinks the class will eventually lose on the merits," Loeb Industries, Inc. v. Sumitomo Corp., 306 F.3d 469, 480 (7th Cir. 2002), but where a question of suitability for class treatment overlaps with a merits question, we must "make a preliminary inquiry into the merits," Szabo v. Bridgeport Machs., Inc., 249 F.3d 672, 676 (7th Cir. 2001). See also In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 307 (3d Cir. 2008) ("[T]he court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits--including disputes touching on elements of the cause of action.").

We denied plaintiffs' first motion for class certification. Plaintiffs defined the putative class as "[a]ll persons and entities throughout the United States" who purchased one or more Craftsman tools that were not all or virtually all made in the United States. They sought certification of a nationwide class for their unjust enrichment claims and an undefined set of classes or subclasses under the laws of seven states for their consumer fraud claims. We held that class treatment was not appropriate for several reasons, the first being that the proposed class was

unidentifiable because it did not specify a time frame. 2007 WL 4287511, at *4. Second, and more importantly, the proposed class was overbroad; it included persons who could not prove deception due to the fact that they (1) bought Craftsman tools but never saw any Craftsman advertising; (2) bought Craftsman tools but never saw Craftsman "Made in USA" advertising; or (3) bought Craftsman tools with the knowledge that those tools were not made in the United States. Id. at *4-5. We followed the reasoning of Oshana v. Coca-Cola Co., 472 F.3d 506 (7th Cir. 2006), in which the plaintiff brought unjust enrichment and statutory consumer fraud claims based on the Coca-Cola Company's alleged failure to disclose that fountain Diet Coke and bottled Diet Coke were not identical. The Seventh Circuit noted that both of these claims required proof that the plaintiff was deceived. Id. at 513-15. Because plaintiff's class definition required only the purchase of a fountain Diet Coke and therefore could include millions of people who were not deceived and could not show any damage, let alone damage proximately caused by the alleged deception, the Seventh Circuit affirmed the district court's holding that the proposed class was improper. Here, as in Oshana, plaintiffs' proposed class definition was improper; it included many class members who were not deceived and suffered no damage. Our third reason for denying class certification was plaintiffs' failure to demonstrate that their claims were sufficiently typical of the putative class. The

evidence is that advertising for Craftsman tools varies greatly and is disseminated through a host of different media; plaintiffs themselves alleged that they saw or heard a number of different Craftsman advertisements. The putative class was exposed to a varied mix of representations, communicated through different channels and absorbed in different ways and to different degrees, and causation would also be different for each plaintiff; therefore, typicality was lacking. 2007 WL 4287511, at *6-7. Fourth, we held that plaintiffs failed to satisfy the predominance requirement because the bulk of the proof on both the unjust enrichment and the consumer fraud claims would relate to individual factual issues such as reliance and causation. Id. at *9. Lastly, we determined that a class action would not be the superior method for adjudicating the case due to manageability problems stemming from the numerous individualized issues and differences in state laws. Id. at *10.

Jolley and Oates now seek certification of, respectively, Pennsylvania and Indiana classes. Jolley's proposed class consists of "[a]ll persons in Pennsylvania who purchased one or more Craftsman tool(s) between January 1, 2000 and December 2, 2004, that [were] not all or virtually all 'Made in the USA.'" (Jolley's Mot. for Class Certification at 1.) Oates's proposed class consists of "[a]ll persons in Indiana who purchased one or more Craftsman tool(s) between January 1, 2000 and December 2, 2004,

which were not all or virtually all 'Made in USA.'"[3] (Oates's Mot. for Class Certification at 1.)

Plaintiffs have added a five-year time frame, which is an improvement, as well as the geographic limitations, but otherwise these class definitions are identical to the definition we previously rejected. The reasoning in our earlier opinion thus applies with equal force, but in their current briefs, plaintiffs do not acknowledge that opinion at all. They do make a number of new arguments, which we will discuss in turn. However, first we must address the ambiguous placement of the phrases "in Pennsylvania" and "in Indiana" in the proposed class definitions. Sears argues that, considering that plaintiffs offer no suggestion for determining who was "in" Pennsylvania or Indiana at any given time, the proposed class would be unmanageable. Plaintiffs reply that the phrase is "plain and unambiguous. The Class includes all persons who, at any time between January 1, 2000 and December 2, 2004, purchased Craftsman products while inside" Indiana or Pennsylvania. (Pls.' Replies at 5.) The placement of the phrase in these definitions is certainly not "unambiguous." Given plaintiffs' explanation, the class definition should be modified to refer to "[a]ll persons who purchased one or more Craftsman tool(s) *in [Indiana or Pennsylvania]* between January 1, 2000 and December

---

[3] Excluded from the classes are Sears and its subsidiaries, parents, divisions, affiliates, officers, and directors.

2, 2004, which were not all or virtually all 'Made in USA.'"

We move on to plaintiffs' new arguments. Plaintiffs first contend that the typicality requirement of Rule 23(a)(3) is satisfied because their claims arise from the same fraudulent scheme, citing <u>In re Prudential Insurance Co. America Sales Practice Litigation Agent Actions</u>, 148 F.3d 283 (3d Cir. 1998). <u>Prudential</u> is distinguishable. It was a federal securities fraud case in which the alleged misrepresentations were standardized and uniform; moreover, plaintiffs' reliance was presumed. See <u>In re Prudential Ins. Co. of Am. Sales Practices Litig.</u>, 962 F. Supp. 450 (D.N.J. 1997) (district court opinion). Here, as we have previously discussed, the alleged misrepresentations are widely varying,[4] and plaintiffs will be required to prove reliance. 2007 WL 4287511, at *6, 9.

Plaintiffs also argue that, pursuant to <u>Kohen v. Pacific Investment Management Co.</u>, 571 F.3d 672, 677 (7th Cir. 2009), <u>Oshana</u> is inapplicable. According to plaintiffs, <u>Kohen</u> stands for the proposition that in order for Sears's overbreadth argument to succeed, Sears must make a "showing" that "a great many" class members suffered no injury. In plaintiffs' view, Sears has failed to do so. Plaintiffs read <u>Kohen</u> too broadly. The Seventh Circuit

---

[4] Plaintiffs also contend that the Seventh Circuit "noted" in <u>Rosario v. Livaditis</u>, 963 F.2d 1013, 1018 (7th Cir. 1992), that varying misrepresentations do not preclude a finding of typicality. As in their previous briefs, plaintiffs overstate <u>Rosario</u>; in fact, the Seventh Circuit did not make this observation. The only issue the Court addressed as to typicality had to do with whether all of the plaintiffs had suffered injury.

stated in Kohen that a class should not be certified "if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant," id. at 677, and concluded that it had "not yet been shown" that the class definition clearly was overbroad because there was "no reason at [that] stage to believe that many" class members had not been injured, id. at 678. The Court noted that while defendant was correct that "a proper class definition cannot be so untethered from the elements of the underlying cause of action that it wildly overstates the number of parties that could possibly demonstrate injury," defendant had not demonstrated that the class definition was so "wildly" overbroad. Id. at 679.

In contrast, here we are satisfied that plaintiffs' proposed classes are "wildly" overbroad. There is ample reason to believe that a great many of the putative class members were not injured. As we discussed in our prior opinion, a basic review of the proposed class definitions and the elements of the underlying claims reveals a great disconnect between those definitions and claims. Sears need not make any particular "showing" in order for us to be able to reach that conclusion. See, e.g., In re McDonald's French Fries Litig., 257 F.R.D. 669, 672-73 (N.D. Ill. 2009) (where plaintiffs alleged that defendant had deceived them about the ingredients of potato products it served, proposed class of persons who had bought the products and had certain medical

conditions was overbroad because it did not include reliance and causation elements).

As to predominance, plaintiffs previously asserted that this requirement was satisfied because their claims could be proven through common evidence of Sears's course of conduct. We were unpersuaded, finding that individual questions of reliance and causation would predominate. Plaintiffs renew the argument but offer no reasons why we should change our ruling. They do, however, present a new twist by contending that as to their consumer fraud claims, only the named plaintiffs need prove reliance and causation--none of the putative class members will be required to do so. In support, plaintiffs cite the following language of, respectively, the Pennsylvania Unfair Trade Practices and Consumer Protection Law (the "Pennsylvania Law") and the Indiana Deceptive Consumer Sales Act ("the "Indiana Act"):

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater.

73 Pa. Stat. Ann. § 201-9.2(a).

> A person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater. . . .
> . . .
> Any person who is entitled to bring an action under

>     subsection (a) on the person's own behalf against a supplier for damages for a deceptive act may bring a class action against such supplier on behalf of any class of persons of which that person is a member and which has been damaged by such deceptive act . . . .

Ind. Code Ann. § 24-5-0.5-4(a), (b).

Plaintiffs submit that the "plain language" of these statutes "make[s] clear" that as to the putative Pennsylvania class, class members other than Jolley will not need to prove that they justifiably relied upon Sears's alleged misrepresentations, and as to the putative Indiana class, class members other than Oates will not need to prove justifiable reliance, proximate cause, or that they purchased their Craftsman products for personal or household purposes. The plain language of these statutes says nothing of the sort, and plaintiffs cite no case law in support of this outlandish argument. Plaintiffs confuse the elements of standing to bring an action, which are set forth in the statutory provisions just quoted, with the elements of the underlying claim, which must be proven in order for a plaintiff to obtain relief. In both Pennsylvania and Indiana, the elements of a consumer fraud claim include reliance upon a misrepresentation and injury proximately caused by the reliance. See Allen-Wright v. Allstate Ins. Co., Civil Action No. 07-CV-4087, 2008 WL 5336701, at *6 (E.D. Pa. Dec. 17, 2008) (holding that reliance element of the Pennsylvania Law meant that individual issues of law and fact predominated and, among other factors, precluded class certification); Kondratick v.

Beneficial Consumer Disc. Co., No. Civ. A. 04-4895, 2006 WL 305399, at *7 (E.D. Pa. Feb. 8, 2006) (holding that claims under the Pennsylvania Law were not amenable to class treatment because of the need for individualized inquiries into reliance, causation, and damages for each class member); Chicago Title Ins. Co. v. Gresh, 888 N.E.2d 779, 783-84 (Ind. Ct. App. 2008) (holding that claims under the Indiana Act involved individual factual issues, such as reliance, that predominated and made class certification inappropriate); Captain & Co. v. Stenberg, 505 N.E.2d 88, 98 (Ind. Ct. App. 1987) (stating that damages under the Indiana Act must be proximately caused by reliance on the misrepresentations). The Indiana Act also requires a "consumer transaction," which is defined as a "sale . . . to a person for purposes that are primarily personal, familial, charitable, agricultural, or household." Ind. Code Ann. § 24-5-0.5-2(a)(1). Plaintiffs' assertion that putative class members need not show that their products were purchased for these purposes is wholly without merit. Plaintiffs seem to suggest that the purposes are apparent from the types of product; however, this is incorrect, as we discussed in our opinion of April 6, 2009. In re Sears, Roebuck & Co. Tools Mktg. and Sales Practices Litig., Nos. 05 C 4742 & 05 C 2623, 2009 WL 937256, at *8 (N.D. Ill. Apr. 6, 2009) (dismissing certain claims).

Regarding Jolley's claim for unjust enrichment, Jolley simply

reiterates plaintiffs' previous argument the claim is "grounded in unjust and unlawful conduct, not fraud," and thus common questions will predominate. (Jolley's Reply Br. at 10.) This is a curious argument given that plaintiff in the same breath refers to misrepresentations and deception. Proving the unjust enrichment claim will require a showing that Jolley conferred a benefit on Sears, that Sears received the benefit, and that the circumstances of receipt and retention are such that it would be unjust for Sears to retain the benefit. See Sack v. Feinman, 432 A.2d 971, 974 (Pa. 1981). Whatever the label plaintiff wishes to use, he cannot avoid the fact that the alleged deception constitutes those "circumstances." So, as we previously found, the bulk of the proof on the unjust enrichment claim will relate to individual factual issues relating to the alleged deception.

The current proposed classes are materially identical to the previously-proposed class, yet plaintiffs have made no attempt to distinguish, or even address, our prior reasoning. In addition, none of plaintiffs' new arguments are persuasive. Therefore, for the reasons set forth in more detail in our opinion of December 2007, we hold that the putative classes are overbroad and fail to satisfy the typicality, predominance, and superiority requirements of Rule 23.

**B.   Sears's Motion to Limit Jolley's Damages**

Jolley's unjust enrichment claim is brought under Pennsylvania

law.  He alleges:

> . . . Sears has been unjustly enriched to the extent that it has inequitably and knowingly received and retained a monetary benefit from selling Craftsman tools to the Pennsylvania Class, at the expense of the Pennsylvania Class.
>
> Specifically, by promoting Sears Craftsman tools as made in USA, Sears (a) substantially increased its sales of Craftsman products; and (b) increased its total store sales by virtue of customers arriving at Sears to purchase Craftsman "Made in USA" products and purchasing other products as well.  The total amount by which Sears has been unjustly enriched has not been ascertained at this time and will be proven at trial, but such damages are believed to be in the millions of dollars.
>
> Plaintiff seeks disgorgement of amounts by which Sears has been unjustly enriched by virtue of its false, misleading advertising of Craftsman products.  The disgorgement remedy inures to the benefit of the Pennsylvania Class.

(Fourth Am. Compl. ¶¶ 96-98 (emphasis added).)  In his prayer for relief, Jolley seeks a judgment on his own behalf "and on behalf of a Pennsylvania Class" that would, in part, "requir[e] Sears to disgorge any benefits obtained by it as a result of its conduct described" in the complaint.  (Id. at 26-27.)

Sears has filed a motion requesting that we "limit" Jolley's recovery on his unjust enrichment claim "to that amount by which Sears was unjustly enriched at his individual expense and to his personal detriment."  (Mem. in Supp. of Mot. to Limit Pl. Jolley's Recovery at 8.)  Sears refers to the above-quoted portions of Jolley's complaint and contends that Jolley is not entitled to recover millions of dollars in profits that Sears earned from sales to other Pennsylvania consumers.  We will construe Sears's motion

as a motion to strike Jolley's prayer for relief to the extent that Jolley seeks disgorgement of Sears's profits relating to other consumers' transactions. See Fed. R. Civ. P. 12(f) (stating that the court may strike from a pleading any immaterial matter).

Sears cites case law for the proposition that in Pennsylvania, recovery for unjust enrichment is restitutionary and is thus limited to the particular transaction or transactions at issue. In other words, Jolley's recovery for unjust enrichment would be tied to the amount by which Sears was allegedly unjustly enriched as a result of the transactions between Jolley and Sears. The Pennsylvania Supreme Court has stated:

> It is well established that a person who has been unjustly enriched at the expense of another must make restitution to the other. The recipient of a benefit is required to make restitution if the circumstances of its receipt and retention are such that, <u>as between the two persons</u>, it would be unjust for the recipient to retain the benefit. In enforcing restitution <u>the purpose is to</u> require the wrongdoer to restore what he or she has received and thus <u>put the injured party in as good a position as that which would have been enjoyed but for wrongful act</u>.

Sack, 432 A.2d at 974 (citations omitted) (emphasis added); see also Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., 933 A.2d 664, 667 (Pa. Super. Ct. 2007) (unjust enrichment is a form of restitution; claim arises "where one person has been unjustly enriched at the expense of another"); Meehan v. Cheltenham Twp., 189 A.2d 593, 595 (Pa. 1963) ("Where one party has been unjustly enriched at the expense of another, he is required to make

restitution to the other.").

Jolley's response is somewhat puzzling. He states that he seeks disgorgement of all profits Sears obtained "to [his] detriment" and to the detriment of class members. We have declined to certify the proposed class, so now we focus solely on Jolley's claim. Jolley acknowledges that he is entitled to recover only those profits that are causally connected to the violation, and he even cites case law in support of the principle that disgorgement is meant to place a deceived consumer in the same position he would have occupied had the seller not induced him to enter into the transaction. (Jolley's Opp'n Br. at 3.) But Jolley then goes on to argue that his disgorgement damages are not limited to the benefit he conferred on Sears. He cites a single opinion from the Seventh Circuit in support of his argument. That opinion, <u>FTC v. QT, Inc.</u>, 512 F.3d 858, 863 (7th Cir. 2008), is not on point, and the quotation Jolley supplies is not taken from that opinion. Rather, it is from the district court's opinion in <u>Oshana v. Coca-Cola Co.</u>, No. 04 C 3596, 2005 WL 1661999, at *10 (N.D. Ill. July 13, 2005), which actually cuts against Jolley. There, the court found that by seeking disgorgement of profits beyond those gained at her expense, Oshana essentially sought class action recovery in a case where class certification had been denied. <u>Id.</u> The court held that any disgorgement award had to be traceable to Oshana's individual injury; her disgorgement remedy was limited to only

those ill-gotten gains that the defendant obtained from her in connection with its alleged misconduct. Id. at *11-12. It is not entirely clear to us, but like Oshana, Jolley seems to take the position that he is entitled to the damages incurred by all statewide consumers. He has cited no Pennsylvania case law in support of this contention, and we have found no such case law. Accordingly, the contention is rejected, and Sears's motion will be granted.

## CONCLUSION

Plaintiff Stephen Jolley's motion for certification of a Pennsylvania class [250] is denied. Plaintiff Curtis Oates's motion for certification of an Indiana class [253] is denied. Defendant Sears, Roebuck & Co.'s motion to limit Jolley's recovery on his unjust enrichment claim [248], which is construed as a motion to strike Jolley's prayer for relief to the extent that it seeks disgorgement of Sears's profits relating to other consumers' transactions, is granted. A status hearing is set for November 4, 2009, at 11:00 a.m.

DATE: October 20, 2009

ENTER: _____
John F. Grady, United States District Judge